Docket No. 108615.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

*In re* DETENTION OF TOMMY O. HARDIN (The People of the State of Illinois, Appellee, v. Tommy O. Hardin, Appellant).

*Opinion filed June 24, 2010.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The circuit court of Du Page County found no probable cause supporting the civil commitment of respondent, Tommy O. Hardin, under the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq*. (West 2006)). The State appealed, and the appellate court reversed the trial court's finding. See 391 Ill. App. 3d 211.

In his appeal before this court, respondent raises two issues of first impression: (1) the jurisdiction of the appellate court after entry of a no-probable-cause finding in a sexually violent person (SVP) commitment proceeding; and (2) the quantum of evidence necessary to support the State's SVP commitment petition at a probable cause hearing. He also challenges the sufficiency of the evidence presented at the probable cause hearing.

We affirm the appellate court judgment. We hold that the appellate court has jurisdiction to hear appeals from findings of no probable cause in SVP commitment proceedings and announce the adoption of the proper evidentiary standard in those hearings. We also conclude that the evidence offered by the State in this case was sufficient to satisfy our newly adopted standard.

## I. BACKGROUND

In 2000, respondent was convicted of five counts of aggravated criminal sexual abuse of a 15-year-old runaway girl committed in 1997 (720 ILCS 5/12–16(d) (West 1996)) and was sentenced to concurrent 22-year prison terms. That offense was committed while respondent was on mandatory supervised release (MSR) following his 1992 conviction for aggravated criminal sexual abuse of a victim between the ages of 13 and 16. His 1992 conviction, in turn, was based on acts committed while he was on probation for a 1991 conviction for aggravated criminal sexual abuse of a victim between the ages of 13 and 16.

On November 19, 2007, one day before respondent's latest scheduled MSR period, the State timely filed a petition in the circuit court of Du Page County seeking his civil commitment under the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 2006)).

The petition was supported by a report written by Dr. Ray Quackenbush, a licensed clinical psychologist and SVP evaluator for the Department of Corrections (DOC) and the Department of Human Services with extensive experience and credentials in SVP evaluations. The trial court qualified him as an expert witness without objection by respondent. The report was based on a two-hour interview with respondent, the results of three psychological tests administered by Dr. Quackenbush, as well as respondent's DOC sex offender prerelease evaluation, his presentence report, his DOC "master file" and medical file, and other Illinois records. In Dr. Quackenbush's expert opinion, respondent suffered from both "paraphilia, not otherwise specified, nonconsenting persons" and "personality disorder, not otherwise specified, with antisocial features" and presented a substantial risk of committing future sexually violent

-2-

offenses. Dr. Quackenbush's report determined that respondent met the criteria for civil commitment as a SVP. A probable cause hearing was scheduled for January 2, 2008.

Dr. Quackenbush was the only witness at the probable cause hearing. He testified about the methodology and information underlying his opinion that respondent met the statutory criteria for civil commitment. Dr. Quackenbush stated that his opinions were based on materials customarily relied on by SVP evaluators, including his interview with respondent, respondent's available records, and the results of the psychological tests. He concluded that respondent suffered from the mental disorders of: (1) paraphilia, not otherwise specified, nonconsenting persons, and (2) personality disorder, not otherwise specified, with antisocial features. Untreated, these disorders made respondent likely to re-offend, a conclusion also supported by respondent's test results and his repeated rejection of offers for sex offender treatment while in prison.

After hearing the testimony and the parties' oral arguments, the trial court found no probable cause to believe respondent was a SVP who was likely to re-offend. Initially, the court agreed with respondent that his current convictions alone could not be used to meet the statutory criteria. It also concluded that "there has not been any testimony of any behavior on the part of [respondent] which would give probable cause to believe that he suffers from any kind of a disorder, a personality disorder. The lack of any evidence and testimony of any disciplinary matters or anything else that would indicate an antisocial personality really belies my ability to make a finding that he suffers from this classified disorder." Lastly, the court stated that the State had not presented any evidence that respondent continued to have an unusual interest in teenage girls, "so that there really is no other basis for this petition, other than the conviction for which he has served his term in the [DOC]."

Consequently, the court ordered respondent to be released and placed on MSR. The cause did not proceed to a full trial on the merits of the State's civil commitment petition. The State appealed the trial court's finding of no probable cause and unsuccessfully attempted to stay execution of the order pending appeal.

Respondent filed a motion to dismiss the appeal, claiming the appellate court lacked jurisdiction because: (1) the Act does not

authorize an appeal by the State from a finding of no probable cause in a SVP proceeding; and (2) even if the State generally has a right to appeal a finding of no probable cause, it cannot appeal the order in this case because the order was not a final judgment. The appellate court denied the motion to dismiss and later reversed the finding of no probable cause and remanded to the trial court for further proceedings. 391 Ill. App. 3d 211. Respondent filed a motion to reconsider, arguing the court failed to address his jurisdictional arguments. The appellate court denied the motion, explaining it had previously rejected those arguments for the reasons stated in the State's response to the motion to dismiss the appeal. This court allowed respondent's petition for leave to appeal. 210 Ill. 2d R. 315.

## II. ANALYSIS

Before this court, respondent raises two issues: (1) whether the appellate court erred in holding it had jurisdiction over the State's appeal, and (2) whether the appellate court gave sufficient deference to the trial court's credibility and probable cause determinations in reversing the finding that no probable cause existed to believe respondent is a SVP who is likely to re-offend. We begin with the threshold question of whether a reviewing court has jurisdiction to hear an appeal by the State from a finding of no probable cause that the subject of a civil commitment petition is a SVP under the Act.

## A. Jurisdiction

We review *de novo* the purely legal issue of jurisdiction. *People v. Drum*, 194 Ill. 2d 485, 488 (2000). Respondent relies on two arguments to support his position that the State cannot appeal a finding of no probable cause under the Act: (1) the language of the Act establishes the legislature's intent that the State may not appeal a finding of no probable cause; and (2) even if the State had a general right to appeal, the order was not a final, appealable judgment.

Respondent's first argument is largely based on section 35(g) of the Act, involving SVP trials. That section states:

> "A judgment entered under subsection (f) of this Section on the finding that the person who is the subject of the petition under Section 15 is a sexually violent person is interlocutory

-4-

to a commitment order under Section 40 and is reviewable on appeal." 725 ILCS 207/35(g) (West 2006).

Respondent argues that although section 35 does not specifically address probable cause hearings, it limits appellate review to cases when a finding of probable cause has been entered, thus barring the appeal of a finding of no probable cause. He adds that the same legislative intent is shown in sections 30(c) and 35(f), requiring the court to dismiss the State's civil commitment petition: (1) if, at the probable cause hearing, "the court determines that probable cause does not exist to believe that the person is a sexually violent person" or (2) if, at the conclusion of a SVP trial, "the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent person." 725 ILCS 207/30(c), 35(f) (West 2006).

These claims involve statutory construction, presenting a pure legal question subject to *de novo* review. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009). When construing a statute, our goal is to determine and effectuate the legislature's intent, best indicated by giving the statutory language its plain and ordinary meaning. *Weather-Tite*, 233 Ill. 2d at 389. This court will not depart from the statute's plain language by reading in exceptions, limitations, or conditions in conflict with the legislature's intent. *Weather-Tite*, 233 Ill. 2d at 390.

After examining the plain language of both sections 35(f) and 35(g), we conclude those sections pertain only to judgments entered after a full trial on the merits of the State's petition. Here, the issue is the State's right to appeal a finding entered at the earlier probable cause stage of the proceedings. Indeed, only if a finding of probable cause is entered at this early stage would respondent ever be subject to a trial on the merits of the State's petition. Thus, the plain language of the Act shows that sections 35(f) and 35(g) do not apply here. We are not persuaded by respondent's argument that the absence of language in the Act affirmatively authorizing a State appeal from a finding of no probable cause mandates the conclusion that the State may not appeal.

Nonetheless, based on the language in section 30(c) mandating dismissal of the State's civil commitment petition after a finding of no probable cause, respondent maintains that the legislature intended to bar the State's appeal. He contends the legislature would have

-5-

specifically provided for an appeal, or at least a bond pending appeal, if it had intended the State to be able to appeal. We do not believe, however, that the absence of specific statutory language affirmatively providing for appeals or bonds supports that interpretation. Indeed, the primary error in respondent's argument is his reliance on the statute's purported silence. His argument overlooks express statutory language affirmatively stating that "[t]he proceedings under this Act shall be civil in nature. The provisions of the Civil Practice Law, and all existing and future amendments of that Law shall apply to all proceedings hereunder except as otherwise provided in this Act." 725 ILCS 207/20 (West 2006). Thus, the Act is not silent about the applicable appellate rules, as respondent claims, but rather directs us to consider the applicable civil provisions.

Section 1–107 of the Code of Civil Procedure states that "[a]ppeals may be taken as provided for in civil cases." 735 ILCS 5/1–107 (West 2006). In turn, Supreme Court Rule 301 notes that "[e]very final judgment of a circuit court in a civil case is appealable as of right." 155 Ill. 2d R. 301. Therefore, if the trial court's finding of no probable cause in this case constitutes a final judgment, the State may appeal that finding.

Accordingly, we next consider respondent's second jurisdictional argument, namely, that the State may not appeal here because a finding of no probable cause in a civil SVP proceeding is not a final judgment. Respondent compares the State's right to appeal in this context to its appellate rights after entry of a finding of no probable cause in a criminal prosecution, citing a Wisconsin case, *State v. Watson*, 227 Wis. 2d 167, 201, 595 N.W.2d 403, 418 (1999). He notes that only final judgments are appealable in both contexts and asserts that the State may not appeal from a finding of no probable cause in a criminal case because the ruling is not final. In a criminal case, the State's only options are to refile its charges or seek a grand jury indictment. He contends the outcome should be the same here, limiting the State to filing another civil commitment petition "no more than 90 days before [respondent's] discharge or entry into mandatory supervised release" (725 ILCS 207/15(b–5) (West 2006)) or "within 30 days of [his] placement onto parole or mandatory supervised release" (725 ILCS 207/15(a)(1) (West 2006)).

We reject respondent's argument for two reasons. First, his

analogy to adverse rulings in criminal probable cause hearings fails because it ignores the statute's plain directive to apply civil law "except as otherwise provided in this Act." 725 ILCS 207/20 (West 2006). Because the Act does not otherwise provide for State appeals from a finding of no probable cause, we must look to the applicable civil law, rather than analogize to our criminal law. Second, respondent's argument is circular because it presumes that the reason the State may not appeal from a finding of no probable cause in a criminal case is because the ruling is not final without providing any support for his presumption. In our view, respondent's reliance on section 30(c) of the Act supports the opposite conclusion.

Under section 30(c), the State's petition must be dismissed if probable cause is not found. 725 ILCS 207/30(c) (West 2006). This court has repeatedly applied three criteria to determine whether a civil ruling is final. A ruling is final if: (1) it terminates the litigation between the parties, and (2) it fixes the parties' rights, (3) "so that, if affirmed, the trial court has only to proceed with execution of the judgment" (*Kellerman v. Crowe*, 119 Ill. 2d 111, 115 (1987)). See *In re A.H.*, 207 Ill. 2d 590, 594 (2003); *In re Curtis B.*, 203 Ill. 2d 53, 59 (2002); *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982). After a finding of no probable cause in respondent's case, the State's petition had to be dismissed under section 30(c), effectively terminating the litigation and defining both parties' rights, leaving only enforcement of the judgment. Respondent was entitled to begin his MSR period, and the State was precluded from advancing the contentions in its civil commitment petition in the trial court. Under our case law, the trial court's finding that no probable cause existed to believe respondent was a SVP constitutes a final judgment and the State was entitled to file an appeal under the statutes and supreme court rules generally applicable in civil cases. Thus, we affirm the appellate court's denial of respondent's motions to dismiss the State's appeal and to reconsider the appellate judgment because we hold that the appellate court has jurisdiction to decide the merits of State appeals from findings of no probable cause in SVP proceedings.

### B. Determination of Probable Cause

The second issue raised on appeal is whether the appellate court gave sufficient deference to the trial court's credibility and probable

cause determinations in reversing the finding of no probable cause to believe respondent is a SVP. To support a finding of probable cause in a SVP proceeding, the evidence must establish that the subject of the petition:

> (1) has been found guilty, delinquent, or not guilty by reason of insanity, mental disorder, or mental defect of a sexually violent offense;

> (2) has a mental disorder; and

> (3) is a danger to others because the mental disorder causes a substantial probability that the subject will commit acts of sexual violence. See 725 ILCS 207/5(f), 15(b) (West 2006).

This appeal presents a controverted question of first impression for this court. The parties note that the Act does not specify the quantum of evidence necessary to establish the three elements required for a finding of probable cause in a SVP proceeding. The determination of the proper quantum of evidence does not involve any questions of fact, making it a legal issue to be reviewed *de novo*. See *People v. Moore*, 207 Ill. 2d 68, 75 (2003) (explaining that "[a] reviewing court determines a legal question independently of the trial court's judgment").

Relying on sections 35(d)(1) and 35(e), respondent argues that the State must prove each element beyond a reasonable doubt. 725 ILCS 207/35(d)(1), (e) (West 2006). Although respondent recognizes that section 35 specifically applies only to SVP trials, he contends it should be provided at probable cause hearings as well as one of the many criminal procedure protections available in probable cause hearings under the SVP Act. These other protections include the rights to be present at the proceeding, to remain silent, to present and cross-examine witnesses, to have the hearing recorded, and to be represented by counsel. 725 ILCS 207/25(c) (West 2006). Respondent claims that if a lower burden of proof is applied, the State could rely on his prior convictions for sexually violent offenses alone to satisfy both the first and second elements, requiring showings that he had committed a sexually violent offense and had a mental disorder. He argues that result would conflict with section 35(e), stating that evidence of the prior commission of a sexually violent offense "is not

sufficient to establish beyond a reasonable doubt that the person has a mental disorder." 725 ILCS 207/35(e) (West 2006).

We are not persuaded that the proper quantum of evidence in a probable cause hearing under the Act is provided in section 35. As we have already noted, section 35 specifically addresses trials under the Act, not probable cause hearings, expressing only the clear legislative intent to apply that evidentiary standard in full SVP trials. To determine the proper quantum of evidence in probable cause hearings under the Act, section 20 of the Act directs us to look to the Civil Practice Law. See 725 ILCS 207/20 (West 2006). Unfortunately, neither the Civil Practice Law nor the Code of Civil Procedure provides any guidance on the appropriate quantum of evidence in a probable cause hearing under the Act. Thus, unlike the jurisdictional issue raised in this appeal, in this instance the Act is truly silent about the applicable standard.

Even if we look to our criminal case law, we must reject respondent's contention that a reasonable doubt standard is proper in making a probable cause determination. In *People v. Jackson*, we explained that

> "*whether probable cause exists is governed by commonsense considerations, and the calculation concerns the probability of criminal activity, rather than proof beyond a reasonable doubt*. [Citation.] 'Indeed, probable cause does not even demand a showing that the belief that the suspect has committed a crime be more likely true than false.' [Citation.]" (Emphasis added.) *People v. Jackson*, 232 Ill. 2d 246, 275 (2009).

Although *Jackson* addressed probable cause in the context of a motion to quash arrest and suppress evidence (*Jackson*, 232 Ill. 2d at 274), the same concept is applicable in other criminal contexts, such as preliminary hearings (725 ILCS 5/111–2(a) (West 2006) (making "probable cause to believe the defendant committed an offense" the touchstone in a preliminary hearing)). Indeed, the Illinois SVP statute is *sui generis*, containing elements of various criminal and civil proceedings. Neither defendant nor our own research, however, has uncovered any context where probable cause must be proven beyond a reasonable doubt. Similarly, the United States Supreme Court has recognized the necessary "difference in standards and latitude allowed

-9-

in passing upon the distinct issues of probable cause and guilt." *Brinegar v. United States*, 338 U.S. 160, 174, 93 L. Ed. 1879, 1889, 69 S. Ct. 1302, 1310 (1949). Because the language chosen by our legislature has not clearly established its intent to impose the same high burden of proof present in a criminal trial at the probable cause stage of a SVP proceeding, this court will not impose that standard here.

Alternatively, the State suggests we adopt the evidentiary standard recognized in the Wisconsin case of *State v. Watson*, 227 Wis. 2d 167, 595 N.W.2d 403 (1999). In *Watson*, the Wisconsin Supreme Court specifically addressed the quantum of evidence needed to support a finding that a respondent is a SVP. Respondent acknowledges that the Wisconsin SVP statute is substantially similar to our own state statute, and our case law also supports this conclusion. See *People v. Botruff*, 212 Ill. 2d 166, 181 (2004) (expressly recognizing that the Wisconsin SVP statute is similar to the Illinois SVP statute); *People v. Masterson*, 207 Ill. 2d 305, 324-25 (2003) (citing with approval a Wisconsin Supreme Court case that "considered state sexually violent offender acts which, like our own SVPA, require proof of the commission of a prior offense, and include specific definitions of 'mental abnormality' or 'mental disorder' "); *In re Detention of Hayes*, 321 Ill. App. 3d 178, 188 (2001) (finding the Wisconsin Supreme Court's interpretation of a portion of that state's "similar statute" persuasive); *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1084-86 (2000) (stating the statutory language in Wisconsin's SVP statute is identical to the language in the Illinois statute and finding the analysis in the Wisconsin case law persuasive).

As the *Watson* court explained, the purpose of a probable cause hearing in a SVP proceeding is "to show that there is a substantial basis for going forward with the commitment, when it is virtually certain that if probable cause is found, the person will remain in custody until" the end of the proceeding, thus providing "a barrier to improvident or insubstantial commitment petitions which are not likely to succeed on the merits." *Watson*, 227 Wis. 2d at 201, 595 N.W.2d at 418. This purpose is similar to that of a preliminary hearing in a Wisconsin felony case, and the court required a similar quantum of evidence to support a finding of probable cause in both contexts.

The *Watson* court noted that a probable cause hearing in either

type of proceeding is merely a "*summary proceeding to determine essential or basic facts as to probability*" and "is '*concerned with the practical and nontechnical probabilities of everyday life* in determining whether there is a substantial basis for bringing the prosecution and further denying the accused his right to liberty.' " (Emphases added.) *Watson*, 227 Wis. 2d at 204, 595 N.W.2d at 420, quoting *State v. Dunn*, 121 Wis. 2d 389, 396-97, 359 N.W.2d 151, 154 (1984). Similarly, the United States Supreme Court has stated:

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.
>
> 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' [Citation.] And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C.J., said for the Court more than a century ago in *Locke v. United States* [citation]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion ***. " *Brinegar*, 338 U.S. at 175, 93 L. Ed. at 1890, 69 S. Ct. at 1310-11.

Our own case law has repeatedly cited portions of the probable cause discussion in *Brinegar* with approval. See *People v. Jackson*, 232 Ill. 2d 246, 275 (2009) (quoting in part); *People v. Wear*, 229 Ill. 2d 545, 564 (2008) (quoting in part); *People v. Love*, 199 Ill. 2d 269, 279 (2002) (quoting in part); *People v. Wright*, 111 Ill. 2d 128, 145-46 (1985), *rev'd in part on other grounds in People v. Boclair*, 202 Ill. 2d 89 (2002) (citing and quoting in part). Thus, the approach taken in *Watson* is consistent with the approach of both this court and the United States Supreme Court when addressing questions of probable cause in criminal cases.

In a SVP probable cause hearing, the *Watson* court merely required the State to "establish a *plausible account* on each of the required elements to assure the court that there is a substantial basis for the petition." (Emphasis added.) *Watson*, 227 Wis. 2d at 205, 595 N.W.2d at 420. In making that determination, the trial judge must consider "all reasonable inferences that can be drawn from the facts in

evidence." *Watson*, 227 Wis. 2d at 205. The requirement that the evidence supporting each element be "plausible" indicates that trial judges need not ignore blatant credibility problems, but the *Watson* court stressed that this type of hearing was "not a proper forum to choose between conflicting facts or inferences." *Watson*, 227 Wis. 2d at 205, 595 N.W.2d at 420. Consequently if after hearing the evidence, the trial judge decides the probable cause determination is supported by a reasonable inference, the cause should be held over for a full trial.

Today, we adopt the *Watson* evidentiary standards to guide our own SVP probable cause proceedings. They are consistent with our traditional approach in criminal cases and provide significant guidance to our trial courts for probable cause hearings in SVP proceedings.

Applying these principles here, we conclude the trial court did not apply the correct evidentiary standards. In finding that the State failed to establish probable cause that respondent is a SVP, the trial court weighed the conflicting evidence presented during both the direct and cross-examination of the State's sole witness, Dr. Quackenbush, as well as delving extensively into the credibility of his expert testimony. While these factors are generally relevant in a full trial on the merits of the State's SVP petition, they are well beyond the scope of the limited inquiry in a probable cause hearing. As long as the State presented enough evidence at the hearing to "establish a plausible account on each of the required elements," providing "a substantial basis for the petition" when all reasonable factual inferences are considered, probable cause is established. *Watson*, 227 Wis. 2d at 205, 595 N.W.2d at 420.

Here, it is indisputable that respondent has been found guilty of a sexually violent offense, satisfying the first element. Respondent's argument, therefore, is limited to the sufficiency of the evidence on the second and third elements. The second element requires evidence that respondent has at least one mental disorder. The third element requires evidence that respondent presents a danger to others because his mental disorder causes a substantial probability that he will commit other acts of sexual violence. 725 ILCS 207/5(f) (West 2006).

The State presented testimony on each of these elements from Dr. Quackenbush, who was qualified as an expert witness without objection. Dr. Quackenbush unquestionably had extensive experience

as a clinician, a SVP evaluator, and an expert witness in SVP cases. On the second probable cause element, he testified that respondent had at least one mental disorder. Based on his two-hour interview with respondent, his review of respondent's criminal records and master file, the somewhat conflicting information about respondent's sex offender treatment history, and the diagnostic criteria of the Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV), Dr. Quackenbush concluded that respondent suffered from two mental disorders: (1) paraphilia, not otherwise specified, nonconsenting persons, and (2) personality disorder, not otherwise specified, with antisocial features.

According to Dr. Quackenbush, a paraphilia diagnosis requires evidence that respondent has experienced strong sexual urges, fantasies or behaviors with nonconsenting individuals over at least six months at some point in his life and that they caused a major social disruption in his life. Dr. Quackenbush testified those criteria were met when respondent was convicted of three sex offenses involving nonconsenting persons within five years.

Dr. Quackenbush also explained that a diagnosis of personality disorder, not otherwise specified, with antisocial features required evidence that respondent had a personality disorder that did not fit within another personality disorder category. Dr. Quackenbush could not definitively diagnose respondent with antisocial personality disorder because insufficient information was available about whether respondent suffered from conduct disorder before he was 15, a necessary component of that diagnosis.

During cross-examination, respondent emphasized that Dr. Quackenbush did not interview the victims, relying instead on summaries of police reports and other institutional records to make the paraphilia diagnosis, and that he had not reviewed respondent's DOC disciplinary history prior to making the personality disorder diagnosis. In addition, Dr. Quackenbush had not asked respondent for specific details about his alleged sex offender treatment while incarcerated or his intent to further his education and marry once he was out of prison. Lastly, Dr. Quackenbush acknowledged that respondent had not exhibited any behavior consistent with paraphilia during his most recent DOC term.

The trial court found that the testimony did not establish that

-13-

respondent currently suffered from either paraphilia or personality disorder and that his current conviction alone was insufficient to support either diagnosis. Accordingly, the court believed it was unable to make a finding of probable cause at that time. Building on the trial court's finding, respondent argues that if the mental disorder element may be satisfied by a prior conviction for a sexually violent offense, the State would only need to offer certified copies of the prior conviction to establish all but one of the requisite elements. We disagree.

While the presence of prior convictions cannot be determinative of whether the subject of a SVP petition suffers from a mental disorder, those convictions may, however, provide substantial evidence of the presence of underlying behaviors and psychological traits that combine to meet the diagnostic criteria for a particular mental disorder. For example, here defendant was diagnosed with paraphilia, not otherwise specified, nonconsenting persons, based on his conduct over the time period specified in the DSM-IV, as established by his three convictions for sex offenses in five years. The critical component of the proper analysis is not the presence or absence of prior related convictions, but rather whether evidence that respondent committed acts meeting the appropriate diagnostic criteria for a mental disorder has been presented, regardless of the source of that evidence.

Respondent also contends the trial court correctly found that Dr. Quackenbush's testimony was insufficient to conclude he suffered from a mental disorder. While the foundation of Dr. Quackenbush's diagnoses was directly attacked on cross-examination, the State was not required to show more than "a plausible account" on that element based on all reasonable inferences from the facts. At a probable cause hearing in a SVP case, the court should not attempt to determine definitively whether each element of the State's claim can withstand close scrutiny as long as some "plausible" evidence, or reasonable inference based on that evidence, supports it. Here, Dr. Quackenbush's testimony on the DSM-IV criteria and the evidentiary bases for his diagnoses was adequate to survive that relatively low threshold standard. Hence, the trial court erred in finding the State did not establish the second probable cause element.

Finally, we consider respondent's claim that the State failed to

-14-

prove the third element necessary for a probable cause finding, namely, that he presents a danger to others because his mental disorder creates a substantial probability that he will commit additional acts of sexual violence. Respondent argues only that if convictions for sexually violent offenses are enough to show the presence of a mental disorder, the State could claim in every case that "it is substantially probable that the respondent will engage in acts of sexual violence." Thus, he contends that prior convictions could be used to establish all three elements of probable cause summarily, weakening respondents' protections against unjustified SVP petitions.

Respondent's argument overlooks the intended purpose of a probable cause hearing in a SVP proceeding. As *Watson* notes, the hearing is intended to be preliminary in nature, a "summary proceeding to determine essential or basic facts as to probability" and "is 'concerned with the practical and nontechnical probabilities of everyday life'" while remaining cognizant of the respondent's liberty rights. *Watson*, 227 Wis. 2d at 204, 595 N.W.2d at 420, quoting *Dunn*, 121 Wis. 2d at 396-97, 359 N.W.2d at 154. See also *Jackson*, 232 Ill. 2d at 275 (stating that probable cause addresses factual and practical probabilities of everyday life).

Although probable cause deals with practical probabilities rather than absolute certainties, more is required of the State than mere argument. The State must provide actual evidence, even if based at least in part on behaviors and traits reflected in prior convictions, to support a finding that the respondent meets each of the three probable cause elements. That evidentiary burden includes a showing that the respondent is substantially likely to re-offend based on the presence of a mental disorder. Here, Dr. Quackenbush testified to respondent's moderate to high scores on standardized psychological tests as support for his expert opinion that respondent presented a substantial risk of re-offending.

Dr. Quackenbush also explained that his risk assessment was affected by the unique type of victim respondent consistently selected. He noted that respondent "has a very focussed [*sic*] deviant interest. He is interested in girls around the age of 15." Dr. Quackenbush stated that "[a] deviant sexual interest has been shown statistically in research to show an increased likelihood of the risk of re-offense."

While the standard in a probable cause hearing is relatively low, it

-15-

still must be met by the State, and we conclude it was met in this case. The trial court, however, decided the standard was not met. Due to its application of an inaccurate standard, the court relied on a full and independent evaluation of Dr. Quackenbush's credibility and methodology, considerations that are inappropriate at the probable cause stage of the SVP proceedings.

We note that if a finding of probable cause is entered in a SVP proceeding, the State must overcome a significantly higher evidentiary standard at trial by proving each of the requisite elements beyond a reasonable doubt. The higher trial standard refutes respondent's broad claim that a lower probable cause standard necessarily undermines respondents' basic liberty rights. See 725 ILCS 207/35(d)(1) (West 2006).

## III. CONCLUSION

For the stated reasons, we conclude that the State has the right to appeal from a finding of no probable cause in a SVP proceeding. We also adopt the *Watson* evidentiary standards for probable cause hearings (*Watson*, 227 Wis. 2d 167, 595 N.W.2d at 403) and hold that those standards were sufficiently met to uphold the appellate court's reversal of the trial court's finding of no probable cause in this case. Accordingly, we affirm the appellate court judgment, reversing the judgment of the trial court and remanding the cause to the trial court for further proceedings.

*Appellate court judgment affirmed.*

-16-