2025 IL App (1st) 232492-U

SECOND DIVISION
June 17, 2025

No. 1-23-2492

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* COMMITMENT OF CARL GRANT | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14 CR 80004 |
| | ) | |
| Carl Grant, | ) | Honorable |
| | ) | James B. Novy, |
| Respondent-Appellant.) | ) | Judge Presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    ***Held***:  We affirm respondent's civil commitment as a sexually violent person where the evidence at trial supported the judgment, and where the State's closing and rebuttal arguments were proper.

¶ 2    In 1988, respondent Carl Grant was found guilty of home invasion and four counts of aggravated criminal sexual assault of a 13-year-old girl. The evidence in that case established that

Grant snuck into a home, overpowered the minor, and sexually assaulted her. The court sentenced him to 50 years' imprisonment with the Illinois Department of Corrections (IDOC). Before his scheduled release from prison in early 2014, the State petitioned to civilly commit Grant as a Sexually Violent Person (SVP) under the Sexually Violent Persons Commitment Act (Act). 725 ILCS 207/1 *et seq.* (West 2014). On April 25, 2014, the circuit court held a probable cause hearing and determined there was probable cause to believe that Grant is an SVP under the Act. Grant was detained and evaluated at the Department of Human Services (DHS) from 2014 until his SVP trial in 2023. In 2023, a jury found that Grant is an SVP under the Act, and he was committed to secure treatment with DHS. Grant appeals. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. SVP Jury Trial

¶ 5      The central issue at trial was whether Grant is an SVP; in other words, does he have a mental disorder that makes it substantially probable that he would engage in sexually violent behavior if he were released. The State called two witnesses: Dr. John Arroyo and Dr. Nicole Hernandez. One witness testified on behalf of Grant: Dr. Diane Lytton. The parties stipulated that all three witnesses were experts in clinical psychology, specifically SVP evaluations.

¶ 6                                    *1. Dr. John Arroyo*

¶ 7      Dr. Arroyo has been a licensed clinical psychologist since 2003. He holds a bachelor's degree, two master's degrees, and a doctorate in clinical psychology. At the time of trial, he was employed as a licensed sex offender evaluator with Wexford Health Sources (Wexford), a company that provides medical services to correctional facilities in Illinois. As a sex offender evaluator, he determines whether an individual meets the criteria to be civilly committed as an SVP. He has held the sex offender evaluator license since 2013 and has had training in this subject

area with Wexford as well as a prior employer, attended trainings on SVP laws at the University of Virigina, attended annual conferences at the Association for the Treatment of Sexual Abusers, and completed continuing education requirements for being a licensed sex offender evaluator. At the time of trial, Dr. Arroyo had completed 180 SVP evaluations in total, finding 85 individuals to be SVPs and 95 to not be SVPs. Dr. Arroyo had been qualified as an expert in clinical psychology 93 times in Illinois and testified in relation to Grant's case about 10 times in the past.

¶ 8    Dr. Arroyo concluded that Grant is an SVP. He diagnosed Grant with (1) other specified paraphilic disorder – sexually aroused to non-consenting partners (OSPD – non-consent) and (2) antisocial personality disorder (APD). Dr. Arroyo used the Diagnostic Statistical Manual of Mental Disorders (DSM) to make this diagnosis. Dr. Arroyo opined that these disorders make it substantially probable that Grant would engage in acts of sexual violence if released.

¶ 9    Dr. Arroyo first evaluated Grant in 2014 after an initial screening of Grant resulted in his referral to Dr. Arroyo for further evaluation. Prior to interviewing Grant, Dr. Arroyo received Grant's master file, which included IDOC documents, police reports, and treatment records. Dr. Arroyo first reviewed the master file and then conducted a one-on-one interview with Grant on January 24, 2014, which lasted approximately one and a half to two hours. He prepared a written report summarizing the results of that interview. In 2018, Dr. Arroyo attempted to interview Grant again to update his report, but Grant refused to participate. However, Dr. Arroyo updated his report based on DHS records from 2014 through 2018. In 2023, Dr. Arroyo again updated his evaluation based on DHS records – those from 2018 through 2023. Dr. Arroyo explained that he wanted to conduct follow-up interviews and update his reports because things can change as people get older or become sick, or something could happen that would no longer render them SVPs. Dr. Arroyo explained that it is common to update records based solely on records.

¶ 10    Dr. Arroyo also examined Grant's criminal history to determine whether it indicated a pattern of behavior. Specifically, Dr. Arroyo considered Grant's (1) 1977 case in which he was charged with burglary, kidnapping, and attempted rape and was sentenced to five years' imprisonment; (2) 1980 case in which he was charged with home invasion, armed violence, burglary, and attempted rape, found guilty of home invasion and armed violence, and sentenced to 12 years' imprisonment; (3) 1986 case, which was dismissed, in which he was charged with residential burglary, home invasion, and aggravated battery; and (4) 1988 case in which he was charged with aggravated criminal sexual assault and home invasion, found guilty of four counts of aggravated criminal sexual assault and home invasion, and sentenced to 50 years' imprisonment. Based on these cases, Dr. Arroyo was able to identify a pattern. The pattern he identified is that Grant enters a victim's home, confronts the victim, attempts to assault the victim or actually does assault the victim, and leaves the scene.

¶ 11    Dr. Arroyo also considered Grant's conduct while with IDOC, finding that Grant had 80 disciplinary infractions, including minor infractions and major ones that resulted in segregation time. Grant had been found guilty of assaulting correctional staff twice. While in prison, he had committed sexual misconduct by kissing another inmate. Dr. Arroyo also noted Grant's infractions while in custody with DHS, including threatening to hit staff with a mop and a garbage can, possessing pornographic DVDs, and attempting to fight.

¶ 12    As part of his evaluation, Dr. Arroyo conducted a risk assessment to determine whether it would be substantially probable that Grant engages future acts of sexual violence. He used actuarial tools, including the Static-99R model relied on by experts in the field, and considered both dynamic risk factors as well as protective factors. First, the Static-99R placed Grant in the "well above average risk" of reoffending category. Second, Dr. Arroyo identified numerous

dynamic risk factors (that is, factors for which the actuarial calculation does not account) that increase Grant's risk of reoffending, including Grant's lack of concern for others, his impulsivity, his poor problem-solving skills, his deviant sexual interests, and his lack of cooperation with supervision. Finally, as to protective factors, he noted that risk of recidivism drops significantly as an individual ages, particularly after age 70 (Grant was 65 at time of trial). Based on a comprehensive consideration of these findings, Dr. Arroyo concluded that it is substantially probable that Grant would engage in future acts of sexual violence.

¶ 13                    *2. Dr. Nicole Hernandez*

¶ 14    Dr. Hernandez has worked as a licensed sex offender evaluator for DHS since 2016. She holds a bachelor's degree in general studies, a master's degree in general psychology, and a doctorate in clinical psychology. She is a member of the Illinois Association for the Treatment of Sexual Abusers (ATSA) and the Sex Offender Civil Commitment Programs Network. She regularly attends training in treatment and evaluations and attends the ATSA conference every year. At the time of trial, she had completed 410 SVP evaluations. Dr. Hernandez had been qualified as an expert in clinical psychology 19 times in Illinois and testified in relation to Grant's case about five times in the past.

¶ 15    Dr. Hernandez concluded that Grant is an SVP. She diagnosed Grant with OSPD – non-consent and APD. Dr. Hernandez opined that each of these disorders standing alone is a qualifying disorder under the Act and made it substantially probable that respondent would commit sexual violence if released.

¶ 16    Dr. Hernandez testified consistently with Dr. Arroyo regarding procedures prior to interviewing an individual. She spent about 15 to 20 hours reviewing Grant's master file. Then, she interviewed Grant in June 2021 for approximately 55 minutes via videoconference. Following

the interview, she compiled the information she gathered into a report. From Grant's criminal history, she identified a pattern of behavior, which involved Grant entering a home, confronting the victim, attempting to assault the victim, and leaving the scene. Dr. Hernandez acknowledged that the last time Grant committed an act of sexual violence was long ago – in 1988 – but explained that he has been in a controlled environment (state custody) since then, which made it difficult for him to engage in such acts.

¶ 17    Dr. Hernandez conducted a risk assessment to determine whether it would be substantially probable that Grant engages in future acts of sexual violence. She used actuarial tools, including the Static-99R model relied on by experts in the field, and considered both dynamic risk factors as well as protective factors. First, the Static-99R placed Grant in the "above average risk" of reoffending category. Second, Dr. Hernandez identified numerous dynamic risk factors that increase Grant's risk of reoffending, including Grant's lack of concern for others, his lifestyle impulsivity, his antisocial personality disorder, and his intimacy deficits. Finally, she also acknowledged that the risk of recidivism drops significantly as an individual ages, particularly after age 70. Based on these considerations, Dr. Hernandez concluded that it is substantially probable Grant would engage in future acts of sexual violence.

¶ 18                          *3. Dr. Diane Lytton*

¶ 19    Dr. Lytton is an independent forensic psychologist who has been a licensed psychologist in Wisconsin since 1993 and holds an Illinois sex offender evaluator license. Attorneys and courts hire and appoint her to perform a variety of evaluations, but she specializes in the evaluation of sex offenders, including SVPs. She holds a doctorate in psychology. She estimated having evaluated between 50 and 80 people under the Act and had been conducting such evaluations since 2005 or 2007. In 2017, she evaluated 17 people and found two-thirds of them not to be SVPs. The

parties stipulated Dr. Lytton is an expert in clinical psychology and in the forensic evaluation of SVP evaluations.

¶ 20     Dr. Lytton concluded that Grant is not an SVP. In reaching that conclusion, she relied on her interview with Grant, his criminal history, police reports of the underlying offenses, prison records, and DHS records. Dr. Lytton interviewed Grant on four occasions between 2019 and 2021 for a total of about six hours. She drafted a report as to her findings. She concluded that Grant does not meet the criteria to be eligible for commitment under the Act. She stated that, to a reasonable degree of scientific certainty, Grant did not have a qualifying mental disorder, and he was not substantially probable to reoffend.

¶ 21     Like Dr. Arroyo and Dr. Hernandez, Dr. Lytton considered Grant's criminal history. In her view, while it was relevant to consider prior convictions and acquittals, she had to take into account when the last offense occurred (1988). Dr. Lytton placed emphasis on more recent behavior, including whether Grant engaged in any sexually deviant behavior while with IDOC or at the DHS facility. She explained that the relevant question was whether Grant *currently* met the commitment criteria, so Grant's behavior in recent years was the most important for her evaluation. She did not find any sexually deviant behavior in Grant's records since his 1988 conviction for aggravated criminal sexual assault of a minor. As to Grant's offenses prior to the 1988 conviction, her opinion was that those were indicative more of general criminal behavior rather than that of a sexually deviant nature. Overall, she did not find that he had a qualifying mental disorder under the Act.

¶ 22     As to Grant's risk of reoffending, Dr. Lytton used the same actuarial tools as Dr. Arroyo and Dr. Hernandez. She noted it was "very difficult" to score Grant because the test does not account for the nuances of offenses and to what extent they were sexually motivated. Still, using the same Static-99R model as Dr. Arroyo and Dr. Hernandez, she placed Grant in the "above

average risk" category of reoffending. She testified that individuals in this risk category have a 12.8% risk of reoffending over five years. Dr. Lytton did not explicitly discuss dynamic risk factors or protective factors. She did not find it was substantially probable that Grant would engage in future acts of sexual violence.

¶ 23                    *4. The State's Closing Arguments*

¶ 24    Grant challenges the State's closing and rebuttal arguments, so we set forth the contested portions here. Grant takes issue with these portions of the State's closing arguments, contending the State improperly stated personal opinions and argued the facts underlying Grant's previous convictions and non-convictions. This, Grant argues, impermissibly misdirected the jury to prior matters that are not the issues of this case. Specifically, Grant cites the following:

> "A house with a female inside, a window to be climbed through, waking up that woman, and more often than not a sexual assault. On repeat. Despite every effort by the criminal justice system to disrupt this pattern, it has been ongoing. It cannot be disrupted because it is such a clear, strong pattern. How many burglaries did you hear about with an empty house? How many burglaries did you hear about where it was just a man inside? Out of the three that you heard about, how many of them involved a situation where Mr. Grant didn't touch the woman? You can't come up with an answer because there isn't one.
>
> ***
>
> I want you to remember Mr. Grant had his first day. He had it after his 1977 conviction. He had a second first day and he had that after his 1980 conviction. Quite frankly, he had a third first day when he was released after the 1986 charges were dismissed. He was held in Cook County Jail and when they were nolled, when they were dismissed, he was released. What did Mr. Grant do with his first days? Five weeks after

his first third first day, he attacked a 13-year-old. He didn't raise a child, he raped one. He didn't save a life, he destroyed one. He crawled in her window, like many windows before, he woke her up and overpowered her. It was an escalation of violence. And after so many attempts at a rape, he finally did it. That's his success story. So without an intervention, without y'all's intervention today, you know what's gonna happen. The pattern is clear.

\*\*\*

Dr. Dr. Lytton's opinion is not credible because she decides when to support her opinion with science and when to ignore it. She told you on the stand that you can't look at certain things because the science doesn't support it. And then when I asked her about a specific page in the handbook by the creators of the tools she says, I don't agree with that; that's not the right science. Well, she's not in charge of the science. She doesn't create it. She doesn't get to change it. There are other people for that. But her opinion's not credible because she's not following the correct science. She picks and chooses what fits her opinion.

\*\*\*

And, again, we've been talking about -- a lot about Les Mis.[1] This isn't a musical song and dance where we're going to come out with jazz hands where everything's going to magically be better. It's not a Disney movie with a magic wand that's going to make his disorder go away. Spoiler alert here: He's going to do it again. Respondent is a sexually violent person."

¶ 25                                    B. Grant's Post-Trial Motion

---

[1]For context, the State referred to *Les Misérables* because Grant's opening statement compared him to the novel's protagonist, Jean Valjean, who went from being a bread thief to a respected member of the community.

¶ 26    On March 2, 2023, the jury found Grant to be an SVP. On April 3, 2023, Grant moved the court to enter judgment in his favor or grant him a new trial. He argued that the State failed to prove that he was an SVP beyond a reasonable doubt because it failed to prove that he currently has a mental disorder that makes it substantially probable that he would engage in future acts of sexual violence. The court denied Grant's motion.

¶ 27                                C. Dispositional Hearing

¶ 28    On October 26, 2023, the circuit court held a dispositional hearing. The State argued that Grant could not safely be managed in the community or on conditional release, so the only option was to continue his civil commitment and treatment in DHS custody. The State relied on a predisposition report prepared by Dr. Hernandez, in which she recommended continued civil commitment and treatment. Grant argued for conditional release, noting his lower risk of recidivism based on his age of 65 and the long period of time that had passed since 1988 conviction. The court determined that Grant should be committed to institutional care with DHS but stated that he would be eligible for annual review as long as he continued treatment.

¶ 29    Grant appeals.

¶ 30                                II. ANALYSIS

¶ 31    On appeal, Grant (1) challenges the sufficiency of the evidence, and (2) requests a new trial because, he argues, the State committed prosecutorial misconduct during its closing and rebuttal arguments when it stated argued the underlying facts of Grant's convictions as substantive evidence and stated personal opinions.

¶ 32                                A. The Act

¶ 33    The Act (725 ILCS 207/1 *et seq.* (West 2014)) allows the State to extend the incarceration of a convicted defendant beyond the time he would otherwise be released, if the State can show

that the defendant is sexually violent. *In re Detention of Hardin*, 391 Ill. App. 3d 211, 216 (2009). A person is deemed sexually violent if he has been convicted of a sexually violent offense and is dangerous because he suffers from a mental disorder that makes it substantially probable that he will engage in further acts of sexual violence. *Id.* The Act authorizes involuntary commitment of an SVP "for control, care and treatment until such time as the person is no longer a sexually violent person." *Id.*; 725 ILCS 207/40(a) (West 2014). Proceedings under the Act are civil in nature. *Hardin*, 391 Ill. App. 3d at 216.

¶ 34 As a defendant who has committed a sexually violent offense nears his prison release date, the State may file a petition to commit him to DHS secure treatment as an SVP. *Id.* at 216-17. If the State files such a petition, the court "shall hold a hearing to determine whether there is probable cause to believe that the person named in the petition is a sexually violent person." *Id.* at 217; 725 ILCS 207/30(b) (West 2014). If the court determines that there is probable cause to believe that the defendant is an SVP, the court must order the person to be taken into custody and transferred to an appropriate facility for an evaluation as to whether the person is an SVP. 725 ILCS 207/30(c) (West 2014). If the court does not find probable cause, it must dismiss the petition. *Id.* Within 120 days after the probable cause hearing, the court must hold a trial to determine whether the person is an SVP. 725 ILCS 207/35(a) (West 2014). If the court finds a person to be an SVP, it must hold a dispositional hearing to determine whether that person should be committed to institutional care in a secure facility or conditionally released. *In re Commitment of Fields*, 2014 IL 115542, ¶ 30. We begin with Grant's challenge to the sufficiency of the evidence.

¶ 35                                    B. Sufficiency of the Evidence

¶ 36 Grant argues that the State has failed to prove that he has a mental disorder that makes it substantially probable he will engage in future acts of sexual violence. When reviewing claims

11

challenging the sufficiency of the evidence, we consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could find that the State proved the elements beyond a reasonable doubt. *In re Commitment of Fields*, 2014 IL 115542, ¶ 20. We will not reverse a jury's SVP determination unless the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt. *In re Detention of White*, 2016 IL App (1st) 151187, ¶ 56. We will not substitute our judgment for the jury's regarding the credibility of the witnesses or the weight to be given the evidence. *Id.* In SVP cases, our supreme court has "relied heavily on expert testimony, deferring to the factfinder on expert credibility." *In re Commitment of Gavin*, 2019 IL App (1st) 180881, ¶ 36.

¶ 37    To establish that Grant was an SVP, the State had to prove beyond a reasonable doubt that (1) Grant was convicted of a sexually violent offense; (2) he has a qualifying mental disorder; and (3) the mental disorder makes it substantially probable that he will engage in acts of sexual violence. See 725 ILCS 207/5(f), 45(d) (West 2014).

¶ 38                                *1. Sexually Violent Offense*

¶ 39    The parties do not dispute that Grant's 1988 conviction for aggravated criminal sexual assault of a minor qualifies as a sexually violent offense under the Act.

¶ 40                                *2. Mental Disorder*

¶ 41    The second element the State must prove is that the defendant has a qualifying mental disorder. A "mental disorder" in this context is a "congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 2014). Essentially, Grant argues that the State failed to prove that he has a current qualifying mental disorder because there is no evidence of any conduct or behavior in

the last 36 years to establish he currently suffered from other specified paraphilic disorder – sexually aroused to non-consenting partners or antisocial personality disorder.

¶ 42    Although the underlying sexually violent offense itself is insufficient to establish that a person has a mental disorder, experts may, in diagnosing a disorder, identify patterns of behavior based on prior offenses. *White*, 2016 IL App (1st) 151187, ¶ 59; *In re Detention of Hardin*, 238 Ill. 2d 33, 51 (2010). Here, that is what Dr. Arroyo and Dr. Hernandez did. They analyzed Grant's criminal history and identified a pattern: Grant enters a victim's home, confronts the victim, attempts to assault the victim, and leaves the scene. Dr. Arroyo and Dr. Hernandez relied on this pattern in diagnosing Grant with OSPD – non-consent and APD. Additionally, Dr. Hernandez explained it would have been difficult for Grant to engage in such behavior since 1988, the time at which Grant's incarceration began. We have repeatedly affirmed SVP adjudications despite the absence of sexually violent acts in controlled environments like IDOC and DHS custody. See, *e.g.*, *White*, 2016 IL App (1st) 151187, ¶¶ 58-60 (evidence held sufficient even though the respondent had not committed sexual assault in the past 30 years); *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 602 (2008) (evidence held sufficient despite the respondent not engaging in nonconsensual sexual activity in the past 26 years); *In re Detention of Welsh*, 393 Ill. App. 3d 431, 455-56 (2009) (evidence held sufficient even though respondent did not engage in inappropriate sexual conduct while incarcerated).

¶ 43    Although Dr. Lytton opined that Grant did not have a mental disorder, it was the jury's role, not ours, to determine which expert's opinion it found more persuasive. See *White*, 2016 IL App (1st) 151187, ¶ 56. Based on the foregoing, we find that any rational trier of fact could conclude that the State proved beyond a reasonable doubt that Grant had a qualifying mental disorder.

¶ 44                                    *3. Substantial Probability*

¶ 45    After establishing that a defendant has a qualifying mental disorder, the State must show that such a disorder makes it "substantially probable" that he will engage in acts of sexual violence in the future. 725 ILCS 207/5(f), 45(d) (West 2014). As used in the Act, "substantially probable" means much more likely than not that Grant will commit acts of sexual violence because of his mental disorder. See *Gavin*, 2019 IL App (1st) 180881, ¶ 43. Grant argues that the State failed to prove that it is substantially probable that he will engage in future acts of sexual violence.

¶ 46    Dr. Arroyo and Dr. Hernandez concluded that Grant's mental disorders make it substantially probable that he will reoffend. In reaching these conclusions, they conducted a comprehensive risk analysis based on actuarial calculations, dynamic risk factors, and protective factors. The doctors acknowledged that Grant's age of 65 was a protective factor because the risk of recidivism drops significantly as an individual approaches age 70. However, they also explained that nothing about Grant's health could serve as a protective factor as he did not have any physical ailments or complications that might hinder his ability to reoffend. They balanced the results of the actuarial calculations, the dynamic risk factors, and Grant's age, and reached their conclusions that Grant was substantially probable to reoffend.

¶ 47    Ultimately, the jury found Dr. Arroyo's and Dr. Hernandez's comprehensive risk assessments more compelling than Dr. Lytton's assessment and determined Grant was substantially probable to reoffend. Any rational trier of fact could have found the same. Moreover, we have repeatedly found evidence sufficient in cases where experts engage in comprehensive risk assessments. See, *e.g.*, *In re Commitment of Montilla*, 2022 IL App (1st) 200913, ¶ 118 (evidence found to be sufficient where experts considered actuarial scores in conjunction with "idiosyncratic, dynamic, and protective factors"); *White*, 2016 IL App (1st) 151187, ¶ 60 (same).

¶ 48     Grant's challenge to the sufficiency of the evidence is essentially an attack on the weight of the evidence and witness credibility, neither of which is within our power to re-weigh or re-evaluate. *White*, 2016 IL App (1st) 151187, ¶ 62. This is ultimately the province of the jury, and we do not disturb the jury's decision as to the resolution of conflicting evidence. *Id.* Any rational trier of fact could have found that the State proved Grant to be an SVP beyond a reasonable doubt.

¶ 49                               C. The State's Closing Arguments

¶ 50     Grant contends that the State committed prosecutorial misconduct during its closing arguments and rebuttal when it (1) argued the underlying facts of Grant's convictions as substantive evidence, and (2) expressed personal opinions. Grant did not object to the State's closing or rebuttal; therefore, he did not preserve the issue for appeal. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005).

¶ 51     Grant requests that we review this issue for plain error. The plain-error doctrine allows us to reach a forfeited error affecting substantial rights in two circumstances. *People v. Herron*, 215 Ill. 2d 167, 178 (2005). First, where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error to ensure that an innocent person was not wrongly convicted. *Id.* Second, where the error is so serious that the defendant was denied a substantial right (and, by extension, a fair trial), a reviewing court may consider the error to preserve the integrity of the judicial process. *Id.* at 179. The first step in plain error review is to determine whether any error occurred at all. *In re Commitment of Tenorio*, 2020 IL App (1st) 182608, ¶ 50. If there is no error at all, there can be no plain error. See *People v. Spicer*, 379 Ill. App. 3d 441, 449 (2009).

¶ 52     The State has wide latitude in making closing arguments as long its comments are based on the evidence or reasonable inferences drawn therefrom. *Tenorio*, 2020 IL App (1st) 182608, ¶

42. The State may comment on the credibility of the witnesses and the defense's characterizations of the evidence, and it may respond in rebuttal to statement made by defense counsel. *Id.* In reviewing a challenge to the State's remarks during closing, we consider them in the context of the entire closing arguments made by both parties. *Id.* We will not reverse a jury's verdict based on improper remarks unless the comments were of such magnitude that they resulted in substantial prejudice to the defendant and constituted a material factor in the verdict. *Id.*

¶ 53                                    *1. Underlying Facts as Substantive Evidence*

¶ 54      Grant does not challenge Dr. Arroyo's or Dr. Hernandez's testimony regarding his criminal history. Indeed, there is no question that an expert may give opinion testimony that relies on facts not in the evidence as long as the underlying information is of the type reasonably relied on by experts in the relevant field. *In re Commitment of Hooker*, 2012 IL App (2d) 101007, ¶ 51. Rather, Grant takes issue with how the State used the bases of the experts' opinion testimony. The underlying facts of an expert's opinion are admissible for the limited purpose of explaining the basis for the expert's opinion, and the basis of an expert's opinion must not be presented to the jury as substantive evidence of the underlying assertions. *In re Commitment of Butler*, 2013 IL App (1st) 113606, ¶ 31.

¶ 55      Grant relies on *In re Commitment of Gavin*, 2014 IL App (1st) 122918, to support his argument that the State's references to his criminal history and pattern of behavior were improper. In *Gavin*, the court found the State's arguments constituted reversible error because they "repeatedly referred to the underlying facts as something other than the basis for the experts' opinions." *Id.* ¶ 73. The court found problematic the State's comments that the experts would "tell" or "show" the jury about the respondent's past crimes, and that the State referred to hearsay

statements as "facts" and "evidence." *Id.* Additionally, the court took issue with the State's framing of the underlying conviction and past offenses as a narrative:

> "[The State] occasionally prefaced its recitation of these details by noting that these facts were what the experts 'relied on' to form their opinions. But, unlike in *Butler*, the prosecutors did not mention how the experts relied on these facts to diagnose or assess [the respondent]. This narration of the facts underlying [the respondent's] crimes, which at times reads as if [the respondent] was on trial for rape, was error. It misdirected the focus of the case, disconnecting the underlying facts and the experts' use of them. In other words, as a narrative, the underlying facts took on the cloak of evidence, thereby leading the jury to consider these facts independent of the expert testimony." *Id.* ¶ 74.

¶ 56   In response, the State asserts that the facts of *In re Commitment of Butler*, 2013 IL App (1st) 113606, are more similar and should control here. In *Butler*, the State discussed the respondent's criminal history both in closing and rebuttal, and the respondent there, like in the case at bar, claimed that the State improperly used the basis of expert testimony as substantive evidence. *Id.* ¶ 29. The court there found that "it is clear that the State argued the facts and circumstances of respondent's history of violent sexual offenses as having been relied upon and completely supporting the opinions of their expert witnesses." *Id.* ¶ 34. We note that the *Gavin* court acknowledged that the State in *Butler* "framed the facts underlying the respondent's past convictions as a 'deviant pattern' of behavior the experts relied on in reaching their diagnosis." *Gavin*, 2014 IL App (1st) 122918, ¶ 70.

¶ 57   In this case, we find the State's arguments similar to those the *Butler* court held to be proper. Here, the State Started its closing arguments with a recitation of the elements of an SVP adjudication. It then discussed Dr. Arroyo's and Dr. Hernandez's testimony and how it supports

these elements. Then, the State stated "Now, both of these doctors spoke at length about patterns, right?" It was only after this point, and in the context of the doctors' testimony, that the State essentially described the pattern to which the doctors had already testified. The specific details of Grant's criminal history were discussed only in the context of the behavioral pattern the doctors and the State described. The State continued to refer repeatedly to the experts by name as it went through all the elements. Here, like in *Butler*, the State framed the facts underlying Grant's past offenses as a pattern of behavior that Dr. Arroyo and Dr. Hernandez relied on in reaching their diagnoses. This was entirely appropriate. In fact, we do not see how the State could have effectively argued that Grant has a mental disorder without at least some recitation of his behavioral patterns, to which the experts testified. The State did not put Grant on trial for his past crimes but mentioned them only in the context of behavioral patterns already identified by experts as considerations relevant to the diagnosis of a qualifying mental disorder. We have no indication that the jury was misdirected. Accordingly, we find no error.

¶ 58                                   *2. Personal Opinions*

¶ 59      Grant argues that the State improperly criticized Grant's expert, Dr. Lytton, during its rebuttal. In its rebuttal, the State argued that Dr. Lytton's opinion is not credible because she decided when to support her opinion with science and when to ignore science. Essentially, this appeared to be a challenge to Dr. Lytton's methodology. Grant also contends that the State improperly pointed out that Dr. Lytton was paid by the defense. However, Grant does not cite any authority to suggest that such argumentation is improper. To the contrary, our jurisprudence is clear that such argumentation is permissible. See, *e.g.*, *People v. Runge*, 234 Ill. 2d 68, 143 (2009) (State's comment that defense expert's accreditation was a "mail-in" accreditation was permissible); *People v. Guerrero*, 2020 IL App (1st) 172156, ¶¶ 20, 21, 22 (State's comments that

defense expert did not teach jury anything about science, that defense expert could not recall what she was saying when she was speaking about her field of specialty, and that defense expert was paid for her testimony by defendant were all permissible); *People v. Luna*, 2013 IL App (1st) 072253, ¶¶ 131-33 (State's comment that defense expert was motivated by money was permissible). Accordingly, we find the State's comments about Dr. Lytton proper.

¶ 60    Finally, Grant takes issue with the State's assertion in rebuttal that absent the jury's SVP finding, Grant is "going to do it again." We are unclear why Grant suggests this is improper. The very reason for the trial was that the State believed Grant would be likely to reoffend, so it petitioned to continue to detain him beyond his release from IDOC. That is simply the State's position. If the State did not believe he was likely to reoffend, it would not have filed a petition. As discussed, one of the three elements of the SVP statute is to prove that Grant was substantially probable to reoffend. The State's comment here is nothing more than an assertion that it has proven one of the elements of the SVP statute. Thus, the State's comment was proper.

¶ 61    Having found the State's closing and rebuttal arguments to be proper, we find no error. Without error, we need not reach the question of plain error. *Spicer*, 379 Ill. App. 3d at 449.

¶ 62                                  III. CONCLUSION

¶ 63    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 64    Affirmed.