THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAX HOPKINS, Defendant-Appellant.

Fourth District   No. 4—99—0692

Opinion filed June 16, 2000.

Jon Gray Noll, of Noll Law Office, of Springfield, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers and David H. Iskowich, Assistant Attorneys General, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In October 1998, the State filed a petition pursuant to section 15

of the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/15 (West 1998)) to have defendant, Max Hopkins, committed as a sexually violent person. In December 1998, the trial court conducted a hearing on the State's petition, granted it, and later ordered that defendant be committed to a secure facility. Defendant appeals, arguing that (1) the court's finding that he was a sexually violent person was against the manifest weight of the evidence; and (2) the court violated his constitutional right to equal protection by committing him to a secure facility pursuant to section 40 of the Act (725 ILCS 207/40 (West 1998)). We affirm.

## I. BACKGROUND

In 1991, defendant pleaded guilty to aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1)) and the trial court sentenced him to 10 years in prison. He was scheduled for release on October 7, 1998. On October 6, 1998, the State filed its petition for defendant's commitment as a sexually violent person, alleging that defendant suffered from pedophilia, alcohol dependency, and antisocial personality disorder and that it was substantially probable that he would commit acts of sexual violence. The trial court ordered that defendant continue to be detained.

In December 1998, the trial court conducted a bench trial on the State's petition. Because the parties and attorneys are familiar with the evidence presented, we will provide only a brief summary.

The evidence showed that defendant's 1991 conviction resulted from an incident involving a 10-year-old girl. Defendant told the police that the incident occurred because the victim had been sexually aggressive toward him even though he repeatedly told her to stop. Defendant had also been convicted in Iowa for lascivious acts with a child.

In April 1996, defendant was conditionally released from prison under supervision. As conditions of his release, defendant agreed to participate in sex-offender counseling and maintain employment. Defendant was employed for only a short time and refused to participate in sex-offender counseling, claiming that he could not afford the cost of the sessions. In October 1997, defendant's supervised release was revoked because he had not complied with its conditions.

Two clinical psychologists, Drs. Agnes Jonas and Paul Heaton, interviewed defendant while he was in prison. During these interviews, defendant admitted the sexual contact that had formed the basis of his convictions but said that, in both instances, the victims had initiated the contact. Defendant did not consider himself to be culpable. He claimed that, in the incident leading to his Iowa conviction, the eight-

year-old victim had initiated contact with him by sitting on his lap while dressed "scantily"—that is, wearing a nightgown. Defendant believed that the victim should have expected to be molested under those circumstances. Defendant denied having any sexual fantasies involving children.

Drs. Jonas and Heaton also reviewed defendant's file at the Department of Corrections and administered several tests, including an intelligence test, a personality test, and a test designed to measure psychopathic tendencies. Both psychologists concluded that defendant suffered from pedophilia, alcohol dependency, and antisocial personality disorder. They concluded that defendant's antisocial personality disorder predisposes him to commit crimes, and his alcohol dependency makes it likely that he will become intoxicated and act impulsively. Because defendant is a pedophile, Drs. Jones and Heaton concluded that it was substantially probable that he would commit acts of sexual violence toward children.

On this evidence, the trial court concluded that defendant was a sexually violent person and ordered a predisposition examination report be prepared pursuant to section 40(b)(1) of the Act (725 ILCS 207/40(b)(1) (West 1998)).

That report indicates that defendant did not receive any sexual offender counseling while in prison, during his supervised release, or after his commitment pursuant to these proceedings. In addition to the availability of treatment while defendant was on release, treatment had been offered to him at least twice during his initial incarceration and once during his detention in these proceedings.

Dr. Heaton, who prepared the report, investigated the availability of outpatient treatment for defendant. The only program available in Sangamon County was the one in which defendant had refused to participate during his period of supervised release. The program is available only to persons who voluntarily participate. Those who deny their sexual offenses may participate for only eight weeks and are dismissed from the program if they continue to deny their offenses. Heaton concluded that "the [s]exually [v]iolent [p]ersons [t]reatment [p]rogram, which is located within the Sheridan Correctional Center, provides the only treatment setting in the state *** that is adequate to meet [defendant's] numerous treatment needs."

The trial court ordered that defendant be placed in a secure setting pursuant to section 40(b)(2) of the Act (725 ILCS 207/40(b)(2) (West 1998)). This appeal followed.

## II. ANALYSIS

Defendant argues that (1) the trial court's conclusion that he is a

sexually violent person is against the manifest weight of the evidence; and (2) the court violated his equal protection rights by ordering him committed to a secure facility. We address these arguments in turn.

## A. The Trial Court's Finding That Defendant Is a Sexually Violent Person

■ The Act defines a sexually violent person as "a person who has been convicted of a sexually violent offense *** and who is dangerous because he *** suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 1998).

Section 35(e) of the Act provides as follows:

> "Evidence that the person who is the subject of a petition *** was convicted for or committed sexually violent offenses before committing the offense or act on which the petition is based is not sufficient to establish beyond a reasonable doubt that the person has a mental disorder." 725 ILCS 207/35(e) (West 1998).

Defendant argues that the trial court violated this provision of the Act by finding him to be a sexually violent person. Specifically, he contends that Drs. Jonas and Heaton diagnosed him with pedophilia solely because of his prior convictions. Defendant contends that the State did not present any evidence that he was currently a pedophile, only that he was a pedophile at the time he committed his crimes.

We are unpersuaded. The question before the trial court was whether defendant has a "mental disorder" as that term is defined in the Act. The Act defines a "mental disorder" as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 1998). Contrary to defendant's assertion, the State did present evidence that his condition was current. Specifically, the State's psychologists testified that the following showed defendant's complete lack of understanding that his sexual behavior was deviant: (1) his continuing denial of culpability, as demonstrated during their interviews with him; (2) his refusal to participate in counseling; and (3) his performance in the tests that they administered. The testimony further established that defendant's denial is ongoing and typical of a pedophile.

Moreover, pedophilia was not the only disorder with which defendant was diagnosed. The witnesses also diagnosed him as suffering from alcohol dependency and antisocial personality disorder, and defendant does not dispute that these diagnoses were based on current evidence. The witnesses explained how these conditions, in conjunction with defendant's pedophilia, made it substantially probable that he would commit acts of sexual violence in the future.

Accordingly, we conclude that the trial court's finding that defendant was a sexually violent person was not against the manifest weight of the evidence.

## B. Defendant's Constitutional Arguments

■ Last, defendant argues that the trial court violated his right to equal protection by ordering that he be committed to a secure facility. He acknowledges that the supreme court has rejected similar constitutional challenges to the Act. See *In re Detention of Samuelson*, 189 Ill. 2d 548, 561-64, 727 N.E.2d 228, 236-37 (2000). However, he insists that even though the Act is facially valid, "the question is whether the law is being applied in a non-constitutional manner."

Defendant's argument has no merit. The supposedly unconstitutional manner in which the trial court applied the Act in this case involved nothing more than following the procedures that the supreme court in *Samuelson* held did not violate equal protection. Accordingly, we conclude that defendant's equal protection rights were not violated.

In so concluding, we also reject defendant's various other constitutional challenges premised on the theory that proceedings under the Act are criminal in nature. That theory is belied by both the Act itself (725 ILCS 207/20 (West 1998)) and the supreme court's decision in *Samuelson*, 189 Ill. 2d at 559, 727 N.E.2d at 235.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GARMAN and MYERSCOUGH, JJ., concur.