In re DETENTION OF TOMMY O. HARDIN (The People of the State of Illinois, Petitioner-Appellant, v. Tommy O. Hardin, Respondent-Appellee).

Second District   No. 2—08—0082

Opinion filed May 1, 2009.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Michael M. Glick and Jay P. Hoffmann, Assistant Attorneys General, of counsel), for the People.

Neil J. Levine, of Law Office of Neil J. Levine, P.C., of Addison, for appellee.

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

In 2000, respondent, Tommy O. Hardin, was convicted of five counts of aggravated criminal sexual abuse (720 ILCS 5/12—16(d) (West 2000)) and was sentenced to 22 years in prison. Respondent was scheduled to be released into mandatory supervised release (MSR) from the Robinson Correctional Center on November 20, 2007. On November 19, 2007, the State filed a petition in the circuit court of Du Page County, asking that respondent be committed pursuant to the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/1 *et seq.* (West 2006)). Finding no probable cause to believe that respondent was a sexually violent person, the trial court dismissed the petition. The State timely appeals. We reverse and remand.

At the probable cause hearing, the State called Dr. Quackenbush as its witness. Quackenbush is a licensed clinical psychologist who evaluates prisoners to determine whether they fit the criteria for a

sexually violent person under the Act. Quackenbush has worked for over 20 years evaluating and treating sex offenders. At the probable cause hearing, Quackenbush was qualified as an expert in sex offender evaluation and risk assessment.

Quackenbush evaluated respondent on November 14, 2007. His evaluation included interviewing respondent and reviewing the prison master file, which included court records, mental health evaluations, police reports, and medical information. These are the types of records reasonably relied upon by experts in his field.

According to Quackenbush, respondent had been convicted three times of sex offenses against teenage girls. First, in 1991, respondent was convicted of aggravated criminal sexual abuse for having an ongoing sexual relationship with a 15-year-old girl. During their relationship, respondent would pose as the victim's father to school personnel in order to get the victim released from school early. Respondent pleaded guilty to aggravated criminal sexual abuse and was sentenced to four months' imprisonment and four years' probation. During respondent's interview with Quackenbush, respondent explained that he met the victim in a bar and she told respondent that she was 21 years old.

In 1992, while on probation, respondent again committed aggravated criminal sexual abuse. The victims were two girls, ages 14 and 15. The girls had skipped school and were driving around with respondent in his car. When the girls refused respondent's sexual advances, respondent bought them liquor and got them drunk. He then drove the girls to a cornfield. He fondled one girl's breasts and vagina. When this girl left, he threatened the remaining girl with violence. He penetrated the girl orally, anally, and vaginally with his penis. Respondent pleaded guilty to aggravated criminal sexual abuse and was sentenced to six years' imprisonment.

In 1997, while on parole for the 1992 offenses, respondent again committed aggravated criminal sexual abuse. He was sentenced to 22 years' imprisonment; this is the sentence that respondent was finishing when the State petitioned for his commitment as a sexually violent person. The facts of this incident are as follows. Respondent went to an arcade in Naperville, where he met several girls, including the victim, who was 15 years old. The girls were runaways. Respondent told the girls that he was a millionaire and could provide them with food and shelter and help them obtain new identities. He told the victim that she would have to be his "sex slave" in return. Respondent told her that she would have to have oral, vaginal, and anal sex with him. He also warned the victim that, if she failed to comply, he would have the girls killed since his father was in the mob. Over the course

of the day, respondent committed various acts of sexual penetration against the victim.

During his interview with Quackenbush, respondent claimed that he had met the girls not at an arcade but rather at an adult-only gaming business. Respondent also stated that the girls initiated the sexual behavior by making sexual advances toward him. He admitted fondling the victim but he denied having sex with her. Respondent "blamed the charges on someone telling [the victim] stuff."

Quackenbush testified that respondent's 1997 aggravated criminal sexual abuse qualified as a "sexually violent offense" under the Act. Furthermore, Quackenbush opined that respondent suffers from mental disorders that create a substantial probability that he will engage in acts of sexual violence. Specifically, using the Diagnostic and Statistical Manual of the American Psychiatric Association, currently the fourth edition (DSM-IV), Quackenbush diagnosed respondent as suffering from paraphilia, not otherwise specified, with nonconsenting persons, and personality disorder, with antisocial features.

The criteria for paraphilia are that, over a period of at least six months at any time in his life, the person has experienced strong sexual urges, fantasies, or behaviors with individuals who are factually or legally unable to consent to sexual activity and that the person's actions have caused marked distress or interpersonal difficulty. The facts supporting Quackenbush's opinion that respondent met these criteria were that respondent had repeatedly been convicted of sexual behavior with nonconsenting persons, specifically three separate incidents over a five-year period involving teenage girls, and that these sexual behaviors led to his repeated incarceration.

The facts supporting the diagnosis of personality disorder with antisocial features were that respondent had shown disregard for lawful behavior, as evidenced by his repeated incarceration, and had exhibited conning and manipulative behavior typical of antisocial personality disorder. In addition to the sex offenses, respondent was also convicted of burglary in 1986, theft in 1987, and writing a bad check in 1990.

Quackenbush explained that paraphilia is a congenital or acquired condition that predisposes respondent to commit acts of sexual violence, while respondent's personality disorder makes it more likely that respondent will commit future offenses.

Additionally, Quackenbush conducted a risk assessment using two actuarial tools to determine respondent's risk of committing future acts of sexual violence. Specifically, he used the Minnesota Sex Offender Screening Tool Revised (MnSOST—R) and the Static—99. Under the MnSOST—R, respondent showed a "high" risk for reoff-

ending and, under the Static—99, he showed a "moderate to high" risk for reoffending. Quackenbush also noted that deviant sexual interest increases the likelihood that a person will reoffend; here, respondent had a very focused deviant sexual interest in 15-year-old girls, and his repeatedly acting on that deviant interest showed an increased likelihood of his reoffending. Lastly, Quackenbush administered the Hare Psychopathy Checklist—Revised, used to assess psychopathy. According to the results of this test, respondent manifested a high degree of psychopathic traits.

According to Quackenbush's report, a sex offender's risk of recidivism can be reduced somewhat by successful completion of a sex offender treatment program. Here, respondent had refused to participate in sex offender treatment while incarcerated. On one occasion in 2000, when the correctional center psychologist, Tim Lawrence, suggested sex offender treatment, respondent stated, "I don't ever want to see your face again. Who is your supervisor? I want to see him now." Respondent was offered sex offender treatment four separate times and he refused each time.

During his interview with Quackenbush, respondent claimed to have completed one year of sex offender treatment while incarcerated. Quackenbush explained that the correctional center does have a limited, 12-week sex *education* program, but this is not a treatment program. In any event, records do not show that respondent participated in the sex education program. On December 27, 2006, respondent inquired about sex offender treatment. On January 12, 2007, respondent was approved to enter the correctional center's sex offender treatment program when an opening became available. As of respondent's probable cause hearing, he had not yet entered the treatment program.

In sum, Quackenbush opined that respondent was dangerous because his mental disorders created a substantial probability that he would engage in future acts of sexual violence.

On cross-examination, Quackenbush testified that he had requested respondent's prison disciplinary records but acknowledged that he had never received the records. Thus, he had no knowledge of respondent's behavior while incarcerated. Quackenbush also testified that respondent's prior convictions of sexual offenses with nonconsenting females established both that respondent had recurrent sexual urges toward nonconsenting persons and that the sexual urges caused marked distress or interpersonal difficulty. Quackenbush acknowledged that respondent's diagnosis of paraphilia was based on respondent's behaviors prior to 1997.

Quackenbush further testified that he considered respondent's disregard for lawful behavior in diagnosing respondent with personality disorder. Quackenbush acknowledged that all inmates have shown some disregard for lawful behavior and that the majority of the inmates are conning and manipulative.

At the close of the evidence, the court found that there was no probable cause to believe that respondent was a sexually violent person subject to commitment under the Act (725 ILCS 207/30(c) (West 2006)). Specifically, the court found as follows:

"The testimony that has been presented goes to the offenses that were committed which brought Mr. Harden [*sic*] to the Department of Corrections. I—I believe that [defense counsel] is correct that those offenses alone cannot be used as a basis for a finding that Mr. Harden [*sic*] is a sexually violent person who is likely to re-offend.

I believe that there has not been any testimony of any behavior on the part of Mr. Harden [*sic*] which would give probable cause to believe that he suffers from any kind of a disorder, personality disorder. \*\*\*

There hasn't been any testimony that he has current sexual urges with regard to teen-age females or any other protected class of individuals so that there really is no other basis for this petition, other than the conviction of which he served his term in the Department of Corrections."

The State timely appeals, arguing that there was probable cause to believe that respondent was a sexually violent person.

The Act (725 ILCS 207/1 *et seq.* (West 2006)) allows the State to extend the incarceration of a criminal defendant beyond the time he would otherwise be entitled to release if the defendant is found to be sexually violent. *In re Detention of Samuelson*, 189 Ill. 2d 548, 552 (2000). Under the Act, a person is deemed to be a sexually violent person if he has been convicted of a sexually violent offense and is dangerous because he suffers from a mental disorder that makes it substantially probable that he will engage in acts of sexual violence. 725 ILCS 207/5(f) (West 2006). The Act authorizes the involuntary commitment of a sexually violent person "for control, care and treatment until such time as the person is no longer a sexually violent person." 725 ILCS 207/40(a) (West 2006). Although individuals subject to the Act are afforded certain procedural safeguards similar to those afforded in criminal prosecutions, proceedings under the Act are civil, not criminal. 725 ILCS 207/20 (West 2006); *In re Detention of Anders*, 304 Ill. App. 3d 117, 122 (1999).

The provisions of the Act are triggered when a defendant who has been convicted of a sexually violent offense is nearing release or

discharge from custody. *Samuelson*, 189 Ill. 2d at 553. The State may file a petition for the defendant's commitment as a sexually violent person, after which filing "the court shall hold a hearing to determine whether there is probable cause to believe that the person named in the petition is a sexually violent person." 725 ILCS 207/30(b) (West 2006); see 725 ILCS 207/15 (West 2006). "At the probable cause hearing, the court shall admit and consider all relevant hearsay evidence." 725 ILCS 207/30(b) (West 2006). If the court determines after the hearing that there is probable cause to believe that the person named in the petition is a sexually violent person, the court shall order that the person be taken into custody and transferred within a reasonable time to an appropriate facility for an evaluation as to whether the person is a sexually violent person. 725 ILCS 207/30(c) (West 2006). If, however, the court determines that probable cause does not exist to believe that the person is a sexually violent person, the court shall dismiss the petition. 725 ILCS 207/30(c) (West 2006).

> " 'Probable cause' is defined as:
> 'Reasonable cause; having more evidence for than against. A reasonable ground for belief in the existence of facts warranting the proceedings complained of.' " *In re Ottinger*, 333 Ill. App. 3d 114, 122 (2002), quoting Black's Law Dictionary 1081 (5th ed. 1979).

The purpose of a probable cause hearing under the Act is to show that there is a substantial basis for going forward with the commitment proceedings, since, if probable cause is found, it is virtually certain that the person will remain in custody until the proceedings are complete, even if the person has fully satisfied the requirements of his criminal sentence. *State v. Watson*, 227 Wis. 2d 167, 201, 595 N.W.2d 403, 418 (1999) (interpreting Wisconsin's sexually violent person commitments statute, which is substantially similar to the Illinois Act). Hence, the probable cause hearing seeks to prevent improvident or insubstantial commitment petitions that are not likely to succeed on the merits. *Watson*, 227 Wis. 2d at 201, 595 N.W.2d at 418. "The probable cause hearing is not a trial; it is a summary proceeding in which the State must establish a plausible account on each of the required elements to assure the court that there is a substantial basis for the petition." *Watson*, 227 Wis. 2d at 205, 595 N.W.2d at 420. In establishing probable cause, the State is entitled to rely on all reasonable inferences that can be drawn from the facts in evidence. *Watson*, 227 Wis. 2d at 205, 595 N.W.2d at 420. The hearing is not a proper forum to choose between conflicting facts or inferences. See *Watson*, 227 Wis. 2d at 205, 595 N.W.2d at 420.

"The existence of probable cause is a mixed question of law and fact." *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 642 (2002). In determining whether probable cause exists, the trial court's factual findings are accorded deference, but the probable cause determination itself is subject to *de novo* review. *Watson*, 227 Wis. 2d at 196, 595 N.W.2d at 416; see also *Fabiano*, 336 Ill. App. 3d at 642 ("Whether the circumstances alleged to show probable cause are true is a question of fact, but, if true, whether those circumstances amount to probable cause is a question of law to be decided by the court").

●1 Again, the State was required to show that respondent (1) had been convicted of a sexually violent offense; (2) has a mental disorder; and (3) is dangerous to others because the mental disorder creates a substantial probability that he will engage in future acts of sexual violence. 725 ILCS 207/15 (West 2006). "Mental disorder" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 2006). Here, the State established probable cause on each of the required elements.

■ First, the 1997 aggravated criminal sexual abuse of which respondent was convicted qualified as a sexually violent offense. See 725 ILCS 207/5(e) (West 2006). Second, Quackenbush utilized the DSM-IV criteria for mental disorders to diagnose respondent with paraphilia, with nonconsenting persons, and a personality disorder, with antisocial features. See *In re Detention of Walker*, 314 Ill. App. 3d 282, 286 (2000) (the DSM-IV is the standard for diagnoses in the United States by psychologists, psychiatrists, and social workers). Specifically, respondent satisfied the criteria for paraphilia because, over a period of at least six months at any time in his life, respondent experienced strong sexual urges or behaviors with individuals who were legally unable to consent to sexual activity, as evidenced by his engaging in three separate sexual incidents with teenage girls over a five-year period; and respondent's actions caused marked distress or interpersonal difficulty, as evidenced by his repeated incarceration for sexual offenses. Because this evidence showed that respondent suffers from paraphilia, we need not decide whether the evidence also supported a finding of a personality disorder with antisocial features, as a respondent must suffer from only one mental disorder to qualify as a sexually violent person. See 725 ILCS 207/5(f) (West 2006).

Third, Quackenbush opined that paraphilia is a congenital or acquired condition that predisposes respondent to commit acts of sexual violence. Quackenbush ultimately concluded that respondent's mental disorders made it substantially probable that he will commit sexually violent acts in the future. The following facts supported

Quackenbush's opinion that respondent remains a sexually violent person likely to reoffend: (1) respondent's repeated refusal to participate in sex offender treatment, which would have reduced his risk of recidivism; (2) respondent's attempts to minimize his criminal behavior by distorting the facts surrounding his offenses, such as by claiming he met victims in establishments for adults only, despite evidence to the contrary, and blaming one victim for initiating the sexual conduct; (3) respondent's lying about having undergone sex offender treatment while imprisoned; (4) respondent's possessing a dynamic risk factor for reoffending, *i.e.*, displaying a strong sexual preference for persons who cannot consent to sexual activity and showing deficits in self-regulating these sexual preferences; (5) respondent's results from actuarial risk-assessment instruments indicating a risk of reoffending (specifically, one assessment indicated a high risk of reoffending and the other indicated a "moderate to high" risk); and (6) the results of the Hare Psychopathy Checklist—Revised, indicating that respondent possessed a high degree of psychopathic traits. Quackenbush's well-supported opinion, together with respondent's pattern of prior sexual offenses, supports a finding of probable cause that respondent is subject to commitment as a sexually violent person. See, *e.g., In re Detention of Tittlebach*, 324 Ill. App. 3d 6, 11 (2001) (respondent's commitment under the Act was upheld where the expert's opinion that respondent was substantially likely to commit another sexually violent crime in the future was based on the expert's interviews with respondent, respondent's history of sexual violence, and the results of the psychological testing).

The trial court rejected Quackenbush's opinion, finding that respondent's prior offenses alone could not "be used as a basis for a finding that Mr. Harden [*sic*] is a sexually violent person who is likely to re-offend." The trial court apparently relied on the provision of section 35(e), governing trials, that states that "[e]vidence that the person who is the subject of a petition under Section 15 of this Act was convicted for or committed sexually violent offenses before committing the offense or act on which the petition is based is not sufficient to establish beyond a reasonable doubt that the person has a mental disorder." 725 ILCS 207/35(e) (West 2006).

Even if this provision applies to probable cause hearings, here, to form his opinion that respondent suffers from a mental disorder, Quackenbush did not rely merely on respondent's prior convictions of sexually violent offenses. Rather, Quackenbush relied on the specific behaviors underlying the convictions. Indeed, the details of a respondent's prior sexual offenses are probative of both the diagnosis of a mental disorder and the determination that it is substantially

probable that the respondent will commit further acts of sexual violence. See *In re Detention of Allen*, 331 Ill. App. 3d 996, 1005 (2002) (the details of respondent's previous sexual offenses were relevant to prove that he suffered from pedophilia and was likely to engage in predatory acts of sexual violence in the future); *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1089 (2000) (prior sexual offenses are highly probative of a respondent's propensity for future violence). Thus, the facts underlying respondent's prior sexual offenses, showing a pattern of deviant sexual urges and behaviors toward underage girls, were relevant to Quackenbush's diagnosis of paraphilia and served as a proper basis for his opinion that respondent suffers from a mental disorder and is likely to engage in future acts of sexual violence. See, *e.g.*, *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 588 (2007) (expert testified that the first criterion for paraphilia was " 'intense recurring sexually arousing urges, fantasies or thoughts or behaviors which occur over at least a 6 month period of time,' " and respondent met this criterion based on his multiple rapes committed over a 10-month period; the second criterion for paraphilia was that these behaviors cause distress or impair respondent's ability to function socially in the workplace or society, and respondent's detention in the DOC and DHS met this criterion).

Respondent's argument to support the trial court's finding of no probable cause relies heavily on the fact that respondent has not engaged in any recent sexual offenses. This argument is similar to the argument presented, and rejected, in *People v. Hopkins*, 314 Ill. App. 3d 315 (2000). In *Hopkins*, the respondent argued that the experts diagnosed him with pedophilia solely because of his prior convictions. The respondent argued that the State did not present any evidence that he was currently a pedophile, only that he was a pedophile when he committed his crimes. *Hopkins*, 314 Ill. App. 3d at 318. The reviewing court found that the following evidence was sufficient to establish that the diagnosis was current: (1) the respondent's continuing denial of culpability; (2) his refusal to participate in counseling; and (3) his performance on an intelligence test, a personality test, and a psychopathy test. *Hopkins*, 314 Ill. App. 3d at 318.

Here, as in *Hopkins*, respondent's recurrent sexually deviant behavior, his lack of sex-offender treatment, his minimization of his deviant behavior, and his poor performance on the actuarial risk-assessment instruments together suggest probable cause that respondent is a sexually violent person subject to further intervention. See *Lieberman*, 379 Ill. App. 3d at 589 ("paraphilia *** is a 'very deep-seeded problem' that requires intensive treatment and does not heal itself or go away while someone who suffers from it is in prison"); *In*

*re Detention of Erbe*, 344 Ill. App. 3d 350, 359 (2003) (factors associated with an increased risk of reoffending include: refusal to participate in sex-offender treatment; deviate sexual preferences; multiple prior sex offenses; offenses other than sex offenses; lack of motivation for treatment; low level of remorse; and antisocial lifestyle).

For these reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings under the Act (725 ILCS 207/1 *et seq.* (West 2006)).

Reversed and remanded.

McLAREN and HUDSON, JJ., concur.