2026 IL App (1st) 242487-U

No. 1-24-2487

FIFTH DIVISION
January 16, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| IN RE COMMITMENT OF MICHAEL CROCKER | ) Appeal from the |
| | ) Circuit Court of |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) Cook County. |
| | ) |
| Petitioner-Appellee, | ) |
| | ) No. 21CR8000001 |
| v. | ) |
| | ) |
| | ) |
| MICHAEL CROCKER, | ) Honorable |
| | ) Lakshmi Jha, |
| Respondent-Appellant). | ) Judge Presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm respondent's civil commitment as a sexually violent person where the evidence at trial supported the finding beyond a reasonable doubt.

¶ 2       Following a jury trial, respondent Michael Crocker was found to be a sexually violent person (SVP) under the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq*. (West 2018)) (SVP Act). Later, following a dispositional hearing, he was committed to the Department of Human Services (DHS) for secure treatment. Crocker appeals and argues that the evidence was insufficient to prove beyond a reasonable doubt that he was an SVP because the State failed to prove he has a mental disorder that makes it substantially probable he will engage in future acts of sexual violence. For the following reasons, we affirm.

¶ 3                                  BACKGROUND

¶ 4       Crocker was convicted of aggravated criminal sexual assault that occurred in 1997. Near the end of his prison term in 2021, the State petitioned the court to commit him as an SVP. Following a hearing on the petition, the circuit court found probable cause to believe that Crocker was an SVP and ordered that he be detained in the DHS Treatment and Detention Facility (TDF) pending trial.

¶ 5       The State's petition against Crocker proceeded to a jury trial in June 2023. To show that Crocker had been convicted of a sexually violent offense, the State submitted a certified record of his conviction for aggravated criminal sexual assault. To show that Crocker suffers from a mental disorder that makes it substantially probable he will engage inacts of sexual violence, the State presented the testimony of Dr. Richard Travis and Dr. Vasiliki Tsoflias, clinical psychologists and experts in sex offender evaluation, diagnosis, and risk assessment. Both experts prepared written reports, which were admitted into evidence at trial.

¶ 6       Both Dr. Travis and Dr. Tsoflias opined that Crocker is an SVP because he suffers from a mental disorder that makes it substantially probable he will engage in acts of sexual violence. In

reaching this conclusion, both experts reviewed and relied on information regarding Crocker's behavior contained in, among other things, his Illinois Department of Corrections (IDOC) master file, including court records and police reports; his medical and disciplinary records from his time in IDOC and DHS custody; additional records from the TDF; and reports from Dr. John Fabian, a clinical psychologist and Crocker's expert witness. Neither Dr. Travis nor Dr. Tsoflias interviewed Crocker.

¶ 7     Dr. Richard Travis testified that he was expert in clinical psychology as to SVP evaluation, risk assessment, and diagnosis. As a clinical psychologist, he specialized in treating and evaluating sex offenders for the past twenty-four years. Dr. Travis met Crocker one time, but Crocker declined to be interviewed. In forming his opinion, Dr. Travis relied upon Crocker's behavior as reflected in the records that he reviewed, including his criminal history, police reports, IDOC records, past evaluations, TDF treatment records, and health and behavioral records.

¶ 8     Dr. Travis also reviewed Crocker's criminal history. He first looked at Crocker's case from May 1988. Dr. Travis explained that Crocker used a ladder to climb into a 14-year-old girl's upstairs bedroom window but ran away when confronted by the girl's father. Crocker was convicted of two counts of attempt residential burglary and was sentenced to seven years in prison.

¶ 9     He next reviewed Crocker's case from June 30, 1988. On that day, at approximately 2 a.m., Crocker climbed through a window into a 17-year-old girl's room, where he pulled the girl's hair, threw her to the ground, and grabbed her breasts. When she screamed, he fled through the window. Later that same morning, Crocker was interrupted while attempting to break into another home. He ran away when a man inside screamed. Later that morning, Crocker climbed

into the bedroom of a 24-year-old woman, put his hand over her mouth to stop her from screaming, then rubbed her vagina through her underwear. When the woman screamed, Crocker ran out of her room, but he was caught by the police as he left the house. Eight days later, while awaiting trial on those offenses, Crocker climbed into the window of a 14-year-old girl's bedroom and rubbed her leg while she was sleeping. When the girl woke up and asked what he was doing there, Crocker answered, "It's okay. It's okay. I'm Mike Crocker," indicating that she knew him from the neighborhood. He then made the girl undress, bit her breasts, and forced her to have intercourse before leaving out of the window.

¶ 10     For assaulting the 17-year-old girl in her bedroom, he was charged with a number of sexual offenses, as well as residential burglary and home invasion. He eventually pled guilty to home invasion and was sentenced to 15 years in prison. For his unsuccessful attempt to break into the second home, Crocker was convicted of attempted residential burglary and sentenced to seven years in prison. For assaulting the 24-year-old woman, Crocker was charged with attempted criminal sexual assault, attempted aggravated criminal sexual assault, residential burglary, and home invasion, and he pled guilty to home invasion and was sentenced to 15 years in prison. For his assault of the 14-year-old girl, Crocker was charged with criminal sexual assault, aggravated criminal sexual assault, aggravated criminal sexual abuse, residential burglary, and home invasion. He pled guilty to home invasion and was sentenced to 15 years in prison.

¶ 11     Crocker was released on parole in September 1995. In January 1996, while on parole, Crocker sexually assaulted a woman in an alley after the woman tripped while walking to a bus stop. Crocker initially grabbed the woman, but she ran to a passerby for help. When he caught up to the woman, Crocker told the passerby not to pay attention to her, claiming that she was his

girlfriend and was drunk. Crocker then dragged the woman into an alley, pushed her to the ground, slapped her face, and pulled off her pants and underwear. When the woman resisted his efforts to force her legs apart, Crocker pushed her knees up to her chest and sexually assaulted her. When the woman tried to stand up and escape, Crocker knocked her down and sexually assaulted her a second time. In the meantime, the passerby had called the police, who arrived to find Crocker on top of the woman. Crocker was convicted of two counts of aggravated criminal sexual assault and was sentenced to 50 years in prison.

¶ 12      Dr. Travis also considered Crocker's statements regarding his offenses. As to the May 1988 offense, where he was caught trying to climb into the 14-year-old girl's bedroom, Crocker claimed that he was only trying to steal money. Regarding the June 1988 offense, Crocker denied assaulting the 17-year-old girl and initially claimed he broke into the home to steal "jewelry or small electronics" but fled when the girl started screaming. He then asserted that he had not been there at all, that he had not even been in the area on that day, and that the police were attempting to "arrest [him] for some burglaries that were impossible for [him] to commit." With respect to the assault of the 24-year-old woman that same day, Crocker admitted he broke into the home but said he was trying to use the phone and claimed he had not seen any women in the house. He also told evaluators that the intercourse with his 14-year-old victim could not have been forced because she knew him and did not scream for help. Finally, regarding his January 1996 offense in the alley, Crocker initially claimed that he did not sexually assault the victim but later claimed that they had consensual intercourse.

¶ 13      Dr. Travis reported that Crocker did not engage in any sex offender treatment in the IDOC and "continued to maintain that he never committed any sexual offenses," and "didn't need any sexual offense treatment." Dr. Travis confirmed that Crocker was housed at the TDF.

¶ 14    Based on this information, Dr. Travis diagnosed Crocker with (1) other specified paraphilic disorder (OSPD), sexual coercion of nonconsenting females; (2) antisocial personality disorder; (3) substance abuse disorder, alcohol use disorder; and (4) substance abuse disorder, stimulant use disorder, specific to cocaine. Dr. Travis explained that he diagnosed Crocker with each of these disorders by determining that Crocker's "patterns of behavior" satisfied the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) criteria for each disorder. Crocker satisfied the diagnostic criteria for paraphilic disorder because he not only exhibited "recurrent kinds of urges and fantasies and arousal about forcing women to do things that they don't want to do sexually," but also repeatedly acted on those thoughts and urges, as evident from his assaults of three nonconsenting women in 1988. Dr. Travis found that Crocker further demonstrated his inability to control his deviant sexual urges when he dragged the woman into an alley and sexually assaulted her just four months after he was released on parole even though a witness was present to observe his assault. Dr. Travis opined that Crocker's paraphilic disorder is a qualifying mental disorder under the SVP Act because it is a congenital condition that "predisposes [Crocker] to engage in sexually violent acts" by causing him to think about and want to commit acts of sexual violence against nonconsenting women. Dr. Travis stated that despite his imprisonment, Crocker continues to suffer from paraphilic disorder because a person's "sexual arousal patterns and sexual interests" are formed by his mid-twenties, because they become "so engrained in him at that point that he has no control over it." Dr. Travis noted that Crocker had not engaged in any treatment to address his inability to control his deviant sexual urges.

¶ 15    Dr. Travis explained that Crocker also satisfied the diagnostic criteria for antisocial personality disorder because he exhibited the requisite patterns of "thinking, believing, and

acting that involves violating other people's boundaries" without regard to their desires or feelings. The diagnostic criteria also includes a pattern of violating rules, deceitfulness, irresponsibility, impulsivity, reckless disregard for the safety of others, aggression, and lack of remorse which Crocker displayed by continuously changing his accounts of his offenses, and refusing to take accountability for his behavior or address his urges but rather "continuing to deny that he hurt any of these women." Crocker also exhibited irresponsibility and lack of remorse. Dr. Travis explained that antisocial personality disorder is a qualifying mental disorder under the SVP Act because it is a congenital or acquired condition which prompts Crocker to "just take what he wants" from women sexually and "make[s] him likely to continue in this kind of behavior."

¶ 16    Finally, Dr. Travis diagnosed Crocker with substance abuse disorders based on his longstanding alcohol and cocaine use, which "drove him to burglarize" to "feed his habit" and contribute to his violent outbursts. Dr. Travis found that there was a connection between Crocker's abuse of alcohol and his sexual violence, because Crocker reported that his alcohol use prompted him to become violent with his girlfriend when he was 17 years old, and that although he knew drinking "was a problem for him," he could not control it.  Crocker also admitted that he was drunk when he sexually assaulted the woman in the alley in 1996. Although Dr. Travis noted that there was no evidence that Crocker was using alcohol or other substances in prison, which is a controlled environment, he stated that Crocker had been unable to abstain from substance use for more than a week while out of prison on parole and had continued abusing substances in violation of his parole conditions. Dr. Travis explained that Crocker's substance abuse disorders are qualifying mental disorders under the SVP Act because they are congenital or acquired conditions which predispose him to commit future acts of sexual violence by

"disinhibit[ing] his behavior" and reducing his ability to refrain from acting on his deviant sexual impulses.

¶ 17    Dr. Travis performed a risk assessment to assess Crocker's likelihood of sexually reoffending. He used two actuarial instruments, the Static-99R and Static-2002R, to determine Crocker's baseline risk using his historical factors. Dr. Travis also analyzed the effect of dynamic risk factors, which change over time and can increase or decrease risk above or below the actuarial baseline. Crocker's score of six on the Static-99R was higher than the scores of 92.4% of all sex offenders and placed him in the highest risk category, at four times more likely to reoffend than the average sex offender. Crocker received a score of six on the Static-2002R, which also considers juvenile offending (for which Travis had no records), placing him in the second highest risk category, at three times more likely to reoffend than the average sex offender.

¶ 18    Dr. Travis noted he lacked enough information to identify dynamic risk factors that could increase Crocker's risk. However, he confirmed there were no protective factors to mitigate the risk of sexual reoffending. Crocker had no medical condition or age factor that reduced his risk below the actuarial baseline, as these were already considered in the scores. Additionally, Crocker had not undergone any sex offender treatment to lower his risk. Dr. Travis emphasized the importance of such treatment for repeat "spree" offenders like Crocker, as it helps them recognize thinking errors and develop strategies to manage future urges. He added that Crocker's time in prison did not lessen the risk, as longer sentences correlate with higher recidivism rates. In conclusion, Dr. Travis stated Crocker's mental disorders significantly increase the likelihood of future sexual violence.

¶ 19    Like Dr. Travis, Dr. Tsoflias based his diagnoses on Crocker's behavioral patterns in the

1988 and 1996 sexual assaults, medical and treatment history while in IDOC and DHS custody, and statements to other evaluators and law enforcement personnel. Dr. Tsoflias diagnosed Crocker with OSPD and paraphilic disorder due to his repeated actions towards nonconsenting females. Dr. Tsoflias explained that paraphilia is a deviant sexual interest, which becomes a disorder when it harms others or causes personal distress or relationship issues. Dr. Tsoflias further testified that OSPD is recognized as a valid diagnosis in Illinois. Crocker's paraphilia was classified as a disorder due to numerous harmful sexual acts against nonconsenting females. Crocker's behavior rapidly escalated over eight years, starting with nonconsensual frotteurism as a teenager and escalating in 1988 to breaking into girls' bedrooms and touching them inappropriately. His behavior escalated even further to include breaking into a home and sexually assaulting a young girl who had been asleep in her bed. Shortly after he was released from prison in 1996, and while he was on parole, Crocker's behavior escalated again when he sexually assaulted a woman in an alley in the middle of the day and in front of a witness.

¶ 20    Dr. Tsoflias also diagnosed Crocker with a personality disorder based on his repeated arrests and convictions, which showed his "failure to conform to social norms," and his lack of remorse, evidenced by his tendency to "deny, minimize, or rationalize his offenses." Crocker never showed remorse or acknowledged the effect that his actions had on his victims. Dr. Tsoflias did not diagnose Crocker with antisocial personality disorder because there was insufficient evidence of such behavior before the age of 15, which is one of the diagnostic criteria. Dr. Tsoflias agreed, however, that Crocker's admissions of fighting and "getting into trouble a lot" indicated he likely engaged in the required antisocial behaviors before age 15.

¶ 21    Dr. Tsoflias stated that Crocker's paraphilic and personality disorders persist because these chronic conditions do not resolve without treatment, though they can be managed.

Crocker's ability not to reoffend while in prison did not change Dr. Tsoflias's conclusions because prison is a controlled environment where Crocker was under constant supervision and "it's not uncommon that people act differently in prison than they do in the community." Dr. Tsoflias explained that Crocker's mental disorders limit his capacity to control his behavior and predispose him to engage in future acts of sexual violence, making it more likely that Crocker will engage in sexually violent behavior.

¶ 22    Like Dr. Travis, Dr. Tsoflias conducted a risk assessment, using actuarial instruments and considering dynamic factors that might affect the risk of reoffending. Crocker scored a six on both the Static-99R and Static-2002R, placing him in the "well above average" risk category. Dr. Tsoflias identified six additional dynamic risk factors that increase Crocker's overall risk: grievance thinking, resistance to rules and supervision, offense-supportive attitude, poor cognitive problem solving, lack of intimate relationships, and preference for sexual violence. Dr. Tsoflias noted no protective factors mitigating this risk. Based on his findings, Dr. Tsoflias concluded that Crocker has a mental disorder making him highly likely to commit another act of sexual violence.

¶ 23    Crocker called Dr. Fabian as a witness, who was qualified as an expert in clinical and forensic psychology, specifically the evaluation and risk assessment of sex offenders. To evaluate whether Crocker qualified as an SVP, Dr. Fabian assessed three criteria: whether Crocker had been found guilty of a qualifying sexually violent offense; whether he had an acquired or congenital mental disorder that predisposed him to commit crimes of sexual violence; and, whether it was probable that he would commit a future act of sexual violence. Dr. Fabian reviewed the records, including police reports, IDOC prison records, TDF records, and prior SVP evaluations. Dr. Fabian also interviewed Crocker.

¶ 24   Dr. Fabian testified that the trauma associated with Crocker's loss of his father at a young age could have caused some emotional and behavioral issues in school. Dr. Fabian, however, confirmed that there were no actual juvenile records, so any information was self-reported by Crocker.

¶ 25   Dr. Fabian acknowledged that it was difficult to evaluate Crocker's sexual history because he had been incarcerated most of his life. Based on Crocker's self-report, Dr. Fabian noted that Crocker was attracted to females, and his longest relationship was for about a year when he was 16 years old. Crocker reported a significant history in his mid-teenage years of using not only alcohol, but also cocaine and marijuana that could have affected his relationships. Dr. Fabian testified that Crocker had no inpatient mental health treatment but had suffered from anxiety, excessive worry, and panic disorder, and was on an anti-anxiety medication for six to twelve months while in prison. While Crocker was in prison, he was assessed for paraphilia, a sexually deviant disorder where the person has recurrent thoughts, behaviors, and fantasies toward a particular stimulus. Dr. Fabian stated that the IDOC assessor ruled out a diagnosis of paraphilia.

¶ 26   Dr. Fabian concluded that Crocker "did not endorse sexual paraphilic tendencies" and "there did not seem to be any *** sexually deviant type tendencies within *** his sex life," although Fabian "qualif[ied]" that statement by acknowledging that his examination "rel[ied] on self-reporting." Like Dr. Travis, Dr. Fabian diagnosed Crocker with antisocial personality disorder and substance abuse disorders based on his history of rule violations and consistent heavy substance use; however, Dr. Fabian determined that neither was a qualifying mental disorder under the SVP Act. Dr. Fabian agreed that OSPD is an accepted qualifying mental disorder in Illinois but determined that Crocker did not suffer from OSPD because his was not a

"unique case."

¶ 27    Dr. Fabian also assessed Crocker's risk of reoffending using the Static-99R, Static-2002R, and risk for sexual violence protocol (RSVP). Crocker scored a six on the Static-99R and an eight on the Static-2002R. Dr. Fabian explained that Crocker's scores reflected a three to four times greater likelihood of sexually reoffending than the average sex offender. Based on the projected 20-year recidivism rates available for the Static-2002R, Crocker's score placed his risk of recidivating at over 50%. Dr. Fabian also stated that Crocker's score on the RSVP indicated that he exhibited at least twelve risk factors that correlated with sexual recidivism. Dr. Fabian conceded that Crocker denied all his sexual offenses and had not participated in any sex offender treatment. Ultimately, Dr. Fabian could not conclude to a reasonable degree of psychological certainty that Crocker is "much more likely" to sexually reoffend.

¶ 28    The jury found that Crocker was an SVP. In November 2024, following a dispositional hearing, the court ordered Crocker committed to DHS custody for secure treatment.

¶ 29                                    ANALYSIS

¶ 30    Crocker argues that we should reverse the judgment of the circuit court because the evidence presented at trial was insufficient to prove that he was an SVP beyond a reasonable doubt.

¶ 31    Under the SVP Act (725 ILCS 207/1 *et seq*. (West 2018)), the State may seek leave to extend the incarceration of a criminal defendant beyond the time he would otherwise be released, if it can show that the defendant is sexually violent. *In re Detention of Hardin*, 391 Ill. App. 3d 211, 216 (2009). A person is deemed sexually violent if he has been convicted of a sexually violent offense and is dangerous because he suffers from a mental disorder that makes it substantially probable that he will engage in acts of sexual violence. *Id*. Involuntary commitment

under the SVP Act is allowed "for control, care and treatment until such time as the person is no longer a sexually violent person." *Id*.; 725 ILCS 207/40(a) (West 2018). Proceedings under the SVP Act are civil in nature. *Hardin*, 391 Ill. App. 3d at 216.

¶ 32    When a defendant who has committed a sexually violent offense nears his prison release date, the State may file a petition to commit him to DHS secure treatment as an SVP. *Id*. at 216-17. If the State files such a petition, the court "shall hold a hearing to determine whether there is probable cause to believe that the person named in the petition is a sexually violent person." *Id*. at 217; 725 ILCS 207/30(b) (West 2018). If the court determines that there is probable cause to believe that the defendant is an SVP, the court must order the person to be taken into custody and transferred to an appropriate facility for an evaluation as to whether the person is an SVP. 725 ILCS 207/30(c) (West 2018). If the court does not find probable cause, it must dismiss the petition. *Id*. Within 120 days after a finding of probable cause, a trial must be held to determine whether the person is an SVP. 725 ILCS 207/35(a) (West 2018). If the court finds a person to be an SVP, it must hold a dispositional hearing to determine whether the person will be committed to institutional care in a secure facility or conditionally released. *In re Commitment of Fields*, 2014 IL 115542, ¶ 30.

¶ 33    As Crocker is challenging the sufficiency of the evidence at his trial, we consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could find the elements proved beyond a reasonable doubt. *Id*. ¶ 20. Under this standard of review, it is not the function of the appellate court to reweigh the evidence or to retry respondent. *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 602 (2007). Rather, the jury, the trier of fact in this case, was responsible for assessing witness credibility, weighing the testimony and evidence, and drawing reasonable inferences therefrom. *Id*. Thus, we will not substitute our

judgment for that of the jury on questions involving the weight of evidence or the credibility of witnesses. *In re Detention of White*, 2016 IL App (1st) 151187, ¶ 56. We will not reverse a jury's determination that an individual is a sexually violent person unless the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt on the question. *Id*.

¶ 34    To establish that Crocker was an SVP, the State was required to prove beyond a reasonable doubt that (1) Crocker was convicted of a sexually violent offense; (2) Crocker has a qualifying mental disorder; and (3) Crocker's mental disorder makes it substantially probable that he will engage in acts of sexual violence. 725 ILCS 207/5(f) (West 2018). Here, it is undisputed that Crocker was convicted of a sexually violent offense. Crocker is only challenging the sufficiency of the evidence on the second and third elements—that he suffers from a qualifying mental disorder and that his disorder makes it substantially probable that he will sexually reoffend.

¶ 35    First, we consider Crocker's argument that State failed to prove beyond a reasonable doubt that he suffered from a mental disorder at the time of trial that predisposed him to sexual violence. Crocker claims that the State's experts, Dr. Travis and Dr. Tsoflias, failed to explain how their diagnoses qualified as current mental disorders under the SVP Act where they relied on his behavior over 28 years ago.

¶ 36    We have previously observed that in SVP cases, courts rely heavily on the conclusions of expert witnesses exercising professional judgment in assessing whether an individual has a mental disorder that predisposes that person to engage in acts of sexual violence. *In re Commitment of Montanez*, 2020 IL App (1st) 182239, ¶ 70; *In re Commitment of Moody*, 2020 IL App (1st) 190565, ¶ 48. Here, Dr. Travis and Dr. Tsoflias, two licensed clinical psychologists, opined to a reasonable degree of certainty based on their training, experience and review of

relevant information in this case, that Crocker suffered from mental disorders under the SVP Act. A "mental disorder" is defined as a "congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 2018).

¶ 37    Dr. Travis concluded that Crocker suffers from OSPD, a disorder arising from his paraphilic sexual interest in nonconsenting females, based on his pattern of seeking out and sexually assaulting nonconsenting female victims. Dr. Travis stated that Crocker satisfied the diagnostic criteria for paraphilic disorder because he not only exhibited "recurrent kinds of urges and fantasies and arousal about forcing women to do things that they don't want to do sexually," but repeatedly acted on those thoughts and urges, as evident from his assaults of three nonconsenting women in 1988. Dr. Travis also testified that Crocker met three criteria for anti-social personality disorder: deceitfulness and lying, consistent irresponsibility, and lack of remorse and continued denial of wrongs. Dr. Travis explained that antisocial personality disorder is a qualifying mental disorder under the SVP Act because it is a congenital or acquired condition which prompts respondent to "just take what he wants" from women sexually and "make[s] him likely to continue in this kind of behavior." Dr. Travis explained that Crocker continues to exhibit the disorder through his ongoing lies about his offenses, refusal to accept responsibility for his actions, and lack of remorse. Finally, Dr. Travis diagnosed Crocker with substance use disorders, which he based on Crocker's cocaine and alcohol use before his incarceration. Dr. Travis explained that Crocker's substance abuse disorders are qualifying mental disorders under the SVP Act because they are congenital or acquired conditions which predispose him to commit future acts of sexual violence by "disinhibit[ing] his behavior" and reducing his ability to refrain from acting on his deviant sexual impulses.

¶ 38    Dr. Tsoflias testified that Crocker suffered from OSPD, paraphilia disorder, and OSPD with antisocial features based on Crocker's behavior that occurred over 28 years ago, as well as his medical and treatment history while in IDOC and DHS custody. Dr. Tsoflias testified that he diagnosed Crocker with paraphilic disorder based on his pattern of repeatedly acting on his interest in nonconsenting females. Dr. Tsoflias stated that Crocker continues to suffer from OSPD, a qualifying disorder under the SVP Act, because paraphilic disorders are chronic conditions and typically do not resolve without attending sex offender treatment. Dr. Tsoflias testified that she also diagnosed Crocker with OSPD with antisocial features rather than antisocial personality disorder based on Crocker's "failure to conform to social norms as evidenced by repeatedly engaging in acts that are grounds for arrest," lack of remorse, denial, minimization or rationalization of his offenses, and failure to acknowledge the effects of his actions on his victims. Dr. Tsoflias explained that Crocker's mental disorders are both congenital or acquired conditions that limit his capacity to control his behavior and predispose him to engage in future acts of sexual violence. She opined that Crocker continues to have OSPD, and the antisocial features "exacerbate the symptoms of the paraphilic disorder," making it more likely that Crocker will act on his paraphilic disorder and engage in sexually violent behavior.

¶ 39    Although Dr. Fabian opined that Crocker did not suffer from a qualifying mental disorder under the SVP Act, it was the jury's role, not ours, to determine which expert's opinion was more persuasive. See *White*, 2016 IL App (1st) 151187, ¶ 56. Based on the foregoing, we find that a rational trier of fact could conclude that the State proved beyond a reasonable doubt that Crocker had a qualifying mental disorder. In so finding, we reject Crocker's argument that the State's experts' reliance on behavior that occurred over 28 years earlier while purposefully ignoring the lack of any sexually deviant behavior since then is fatal to the State's petition. To

the contrary, we have repeatedly affirmed SVP adjudications despite the absence of sexually violent acts in controlled environments like IDOC and DHS custody. See, e.g., *White*, 2016 IL App (1st) 151187, ¶¶ 58-60 (evidence held sufficient even though the respondent had not committed sexual assault in the past 30 years while incarcerated); *Lieberman*, 379 Ill. App. 3d 585, 602 (2008) (evidence held sufficient despite the respondent not engaging in nonconsensual sexual activity in the past 26 years while incarcerated); *In re Detention of Welsh*, 393 Ill. App. 3d 431, 455-56 (2009) (evidence held sufficient even though respondent did not engage in inappropriate sexual conduct while incarcerated).

¶ 40    Crocker next argues that even if the State proved that he had a qualifying mental disorder, the State failed to prove that the mental disorder makes it substantially probable that he will engage in future acts of sexual violence. After establishing that a defendant has a qualifying mental disorder, the State must show that such a disorder makes it "substantially probable" that he will engage in acts of sexual violence in the future. 725 ILCS 207/5(f), 45(d) (West 2018). As used in the SVP Act, "substantially probable" means much more likely than not that Crocker will commit acts of sexual violence because of his mental disorder. *Gavin*, 2019 IL App (1st) 180881, ¶ 43.

¶ 41    Dr. Travis and Dr. Tsoflias both scored Crocker a six on the Static-99R and Static-2002R, placing him in the "well above average" and "above average" risk categories to sexually reoffend. As for dynamic factors, Dr. Tsoflias explained that Crocker exhibited multiple risk factors that increased the likelihood that he will commit future acts of sexual violence, including grievance thinking, resistance to rules and supervision, distorted thinking about women and consent, poor cognitive problem solving, lack of intimate relationships with an adult, and preferences for sexual violence. She also noted that Crocker had a history of substance abuse.

Both Dr. Travis and Dr. Tsoflias found that Crocker had no protective factors that would decrease his risk of reoffending because he was 50 years old with no major medical problems and had received no sex offender treatment. Based on Crocker's scores, dynamic risk factors, and lack of protective factors, both experts opined that it was substantially probable Crocker would commit future acts of sexual violence.

¶ 42    Although Dr. Fabian opined that Crocker was not substantially likely to reoffend, the jury found Dr. Travis's and Dr. Tsoflias's risk assessments more compelling than Dr. Fabian's risk assessment and determined it was substantially probable Crocker would reoffend. See *In re Commitment of Montilla*, 2022 IL App (1st) 200913, ¶ 118 (evidence found to be sufficient where experts considered actuarial scores in conjunction with "idiosyncratic, dynamic, and protective factors"); *White*, 2016 IL App (1st) 151187, ¶ 60 (same). Viewed in the light most favorable to the State, we find the evidence is sufficient to establish that Crocker is substantially likely to sexually reoffend. Crocker's argument that Dr. Fabian's conclusion that he was not substantially likely to reoffend was more persuasive or better supported is an impermissible request to reweigh the evidence and reassess the credibility of the witnesses, neither of which is within our power. *White*, 2016 IL App (1st) 151187, ¶ 62.

¶ 43                                      CONCLUSION

¶ 44    Based on the foregoing, we affirm the judgment of the circuit court.

¶ 45    Affirmed.